IRONS and others *v.* MANUFACTURERS' NAT. BANK and others.[1]

*(Circuit Court, N. D. Illinois.    June 1, 1886.)*

1. BANKS AND BANKING—NATIONAL BANKS—STOCKHOLDERS' LIABILITY—CREDITORS SHARE EQUALLY.

    In a suit in chancery, under the statute of June 30. 1876, by a creditor of a national bank on behalf of himself and all other creditors, against the stockholders of such bank, to enforce their individual liability for the payment of claims against the bank, the fund obtained is a part of the general assets of the bank, and all creditors of the bank stand upon an equal footing in the distribution of it.

2. SAME—ALL CREDITORS MAY TAKE BENEFIT OF BILL—RUNNING OF STATUTE OF LIMITATIONS STOPPED.

    A bill filed under the statute of June 30, 1876, by a creditor of a national bank, against stockholders of such bank, to enforce their individual liability, is for the benefit of all creditors of the bank, although it does not contain an averment of that fact; and filing such a bill stops the running of the statute of limitations upon all claims against the bank.

[1] Edited by Russell H. Curtis, Esq., of the Chicago bar.

3. SAME—DISCHARGE IN BANKRUPTCY, WHEN RELEASE OF STOCKHOLDER'S LIA-
BILITY.
    A discharge in bankruptcy releases a shareholder of a national bank from
his statutory individual liability to creditors of the bank, where, at the time
of his discharge, the claims of such creditors were *provable*, not merely *con-
tingent.*
4. SAME—STOCKHOLDER OF RECORD IS LIABLE.
    Person who appears upon the records of a national bank to be a stockholder
at the time the bank becomes insolvent, is subject to statutory personal lia-
bility of shareholder, although he has previously, in good faith, sold his stock.
5. SAME—BANK IN LIQUIDATION—GUARANTY BY PRESIDENT.
    After a national bank has, by its shareholders, decided to go into liquida-
tion, its president, upon giving paper held by the bank to creditors of .the
bank, as collateral security for their claims, has authority to indorse or guar-
anty such paper in the name of the bank, so as to bind the bank and its
shareholders.
6. SAME—ALL CREDITORS ON SAME FOOTING.
    Creditors of national bank in liquidation, who received, as collateral, paper
guarantied by the bank, and who have obtained judgments against the bank
on its guaranty, stand on basis of general creditors, and should receive only
the amount due them by the books of the bank when it suspended, less pay-
ments and amounts collected from collaterals, with legal interest upon the
unpaid balance.

In Chancery.
*Schuyler & Kremer* and *Mason Bros.*, for complainants.
*H. B. Hurd, H. G. Miller,* and *Jonas Hutchinson,* for defendants.

BLODGETT, J.   This case is now before the court upon the master's
report, made under a decree entered July 3, 1883, whereby he was
directed to take proof and report the amount of the debts of the bank
still unpaid, and the amount due each creditor thereof; the value of
the assets of the bank, if any, aside from the individual liability of
the shareholders; and the amount of assessment necessary to be made
on each share of capital stock in order to fully pay the indebted-
ness of the bank.   See 17 Fed. Rep. 308.   By this report the master
has found there is still due and unpaid to the creditors of the bank
the sum of $368,971.50 for the principal and interest of said indebt-
edness up to November 1, 1884; that said bank has no assets or funds
out of which to pay said indebtedness, except the individual liability
of its shareholders, and that said indebtedness requires an assessment
of 90 per cent. upon the capital stock of said bank held by the re-
spective shareholders.   To this report voluminous exceptions have
been filed by several of the shareholders, and upon the argument of
these exceptions much of the ground which was considered and dis-
cussed upon the former hearing had been again examined.   The pro-
fessional · standing of counsel, and their earnestness in pressing a
rehearing of their points, has caused me to again consider the ques-
tions made, and to some extent review the conclusions announced at
the time the interlocutory decree was entered.

As I understand the ·counsel, they insist that, under the law as it
stood at the time the bank suspended, the remedy of the creditors of
the bank was by a suit at law against the shareholders; and while

they concede that by the amendment of the national banking act of June 30, 1876, jurisdiction was given to a court of equity, upon a bill filed by any creditor, to enforce the liability of the stockholders, yet they claim that the statute of limitations which they have pleaded in the case began to run from the suspension of the bank in September, 1873; and that as the bill in this case, until the amendment in July, 1883, never professed on its face to be filed by the complainants in behalf of themselves and all other creditors of the bank, therefore all debts of the bank but three had become barred by the statute of limitations before a proper bill was filed to enforce the shareholders' liability. I think the fallacy of much of the argument in this case results from the assumption that the provisions of the banking law, in regard to the enforcement of the individual liability of the stockholders for the payment of debts, is to be construed and governed by the rules in regard to the statutory liabilities of the stockholders in state corporations. There are many cases cited in the briefs of counsel showing, in substance, that the liability of the shareholder of a corporation is not an asset of the corporation, and that such individual liability is to be enforced by suit brought by the creditors directly against the shareholders. This rule was announced by Judge WALLACE in *Jacobson* v. *Allen*, 12 Fed. Rep. 455; *Story* v. *Furman*, 25 N. Y. 231; and many other cases which might be cited. The national bank act, however, specifically provides that a receiver, when appointed by the comptroller, shall enforce the individual liability of the shareholders, pay the money over to the treasurer of the United States subject to the order of the comptroller of the currency, and that the comptroller shall, from the proceeds of the property of the bank, and the proceeds of the individual liability of the shareholders, make equal and rateable dividends to the creditors; and, as the act of June 30, 1876, provides that the individual liability of the shareholders may be enforced by a bill in equity filed by any creditor in behalf of himself and all other creditors, it implies that the fund obtained by the enforcement of the statutory liability of the shareholders shall go in with the general assets of the bank, and be equally distributed to all. As the law stood prior to the passage of the act of June 30, 1876, the individual liabilities could only be enforced through a receiver appointed by the comptroller of the currency, (*Kennedy* v. *Gibson*, 8 Wall. 498;) and in providing for the enforcement of this liability through the medium of a bill in equity brought by a creditor, this rule of distribution is not changed, and it is clear that each creditor is to share alike in the proceeds of such bill.

It is further urged that this bill did not become a proper bill, within the terms of the statute of 1876, until the amendment of July 23, 1883, at which time a clause was inserted stating that the bill was filed by complainant in behalf of himself and of all other creditors. The original bill in this case was strictly and technically a creditors' bill, filed by James Irons as a judgment creditor of the

bank, and seeking to obtain possession of the legal and equitable assets of the bank, and to prevent waste by the officers of the bank then in possession of them. It did not seek to enforce the shareholder's liability, nor seek for any decree in that regard. After the passage of the act of June 30, 1876, an amended and supplemental bill by leave of court was filed, in which it was attempted to enforce the shareholder's liability. Some of the allegations in the prayer of this amended and supplemental bill indicate that the pleader who drew it was still of opinion that the complainant would have a right to priority of payment by reason of diligence in the commencement of the proceeding, and this bill contained no clause or statement that it was filed in behalf of the complainant and all other creditors. It seems to me that this clause in the bill was entirely unnecessary, and that, being filed under the statute which directed that it could only operate in behalf of complainant and all other creditors, the law gave direction and force to all that could be done under it, and that the provision of the act of 1876 authorizing the filing of this bill is not to be considered as a rule of practice, or a rule for the framing of the bill, but as a rule defining the rights of parties under such a bill; and that whether such a bill professed upon its face to be filed in behalf of complainant and all other creditors, the court would give it such direction and force, and no other; and that hence, from the time this amended and supplemental bill was filed, in October, 1876, it has been a proper bill under which to enforce the individual liability of these shareholders. Taking this view of the case, I therefore conclude that when this amended and supplemental bill was filed it brought all the creditors of the bank before the court, and was a bill for their benefit as much as if they had all been complainants or parties to it in any form; and that therefore, if the statute of limitations had begun to run in favor of the bank against its creditors, the filing of this bill was the bringing of a suit by each creditor so as to suspend the running of the statute. For the purposes of asserting their rights it was not necessary, I think, for creditors to intervene and make themselves parties to this proceeding, but the court, looking upon this as a special case of statutory jurisdiction, would consider the bill as a suit by each creditor for the purpose of enforcing the collection of his debt.

The question as to the effect of the decree of the discharge in bankruptcy, interposed by the defendants Ira Holmes, Edgar Holmes, M. D. Buchanan, and Pope, has also been rediscussed, and the case of *Garrett* v. *American File Co.*, 110 U. S. 288, S. C. 4 Sup. Ct. Rep. 90, (decided and reported since this question was formerly up,) is now presented as holding a contrary rule from that which I adopted in disposing of these pleas; but after an examination of that case I do not see that it should in any way be allowed to change the conclusion which I have heretofore announced. The decision upon these pleas was placed mainly upon the peculiar facts in the record.

It appears, as I have already said, that the bill to enforce the liability of the shareholders of this bank was filed October 5, 1876. These four shareholders did not get their discharges, and their estates were not closed, until long after this amended and supplemental bill was filed. Their individual liability as shareholders of this bank, whatever it was, had become fixed. The debts of the bank were a fixed quantity. The amount of stock which these shareholders respectively owned was easily provable, and the complainant, or the receiver who had been appointed under the original bill in the case, might have proven this claim for individual liability against the estates of these bankrupts at any time after this bill was filed. It could have been proved in the name of this complainant creditor, or in the name of the receiver. It is true, an assessment had not been actually made, but a bill had been filed which must sooner or later result in an assessment, and a tentative proof could have been made; and hence I think this claim of liability was a provable claim, and not a contingent claim, at the time these proceedings in bankruptcy were commenced. It may be that a shareholder in a solvent bank, continuing in the due course of business, and where the question of his ever being made liable is a remote contingency, would not be released from liability by a discharge in bankruptcy; but in this case the only contingency there was consisted merely in the amount of assessment which would be required upon these shareholders, and a court in bankruptcy could have heard proof as to the amount of the debts of the bank, and the amount of stock, in order to settle the amount of the shareholders' liability.

Counsel for Mr. Charles Comstock have reargued at length the question of the good faith of the transfer of his capital stock. The proof shows that Mr. Comstock appeared by the records of the bank to be the holder of 150 shares of its capital stock on the day the bank closed its doors; but it is claimed that the proof in the case shows that as early as February, 1873, Mr. Comstock sold 50 shares of his stock to Ira Holmes, and that in June, 1873, he sold 50 shares more; but that, owing to inadvertence or neglect, no transfer was made upon the records or books of the company; and no change of ownership of stock was actually made until the day before the bank suspended, when the original stock was canceled, and new certificates issued to the purchasers. I conclude that, for the purpose of determining the individual liability of a shareholder for the debts of a national bank, he must be construed and held to be such shareholder up to the time there is an actual transfer of his stock upon the books of the bank. So long as the man appears upon the books of the bank to be a shareholder, the presumption of law is that the debts of the bank are contracted upon the faith of his liability as such shareholder; and while it may be a hardship upon Mr. Comstock to enforce this individual liability as to shares which he may have sold in good faith several months before the failure, and when the bank

was in good credit, and with no intention of perpetrating fraud, yet, at the same time, he was the only person, in the eye of the law, at least, to whom the creditors of the bank will be presumed to have looked for the purpose of giving credit to the bank, and therefore it is his misfortune if he delayed change of title until insolvency intervened.

It is further urged, in support of some of the exceptions taken, that the proof in the case shows that a large number of the debts of the bank which have been reported by the master have been actually paid out of the assets of the bank, and therefore no longer form a claim against the bank, or against the shareholders. The facts, as I gather them from the proof in the record, are briefly these: The bank, by a resolution of its stockholders, went into liquidation on the twenty-fifth of September, 1873. Ira Holmes, president, was left in charge of its assets, and immediately proceeded to settle with the creditors. The bank had some money, and a large amount of commercial paper, and owed a large amount to its depositors and other creditors. Mr. Holmes made settlements with a great many of these creditors by paying them some money, and turning out to them the commercial paper of the bank. It is now insisted that the testimony of Mr. Holmes shows that this paper was taken in payment of the indebtedness of the bank. It appears, however, that in all cases he either indorsed the commercial paper in the name of the bank, or guarantied it in the name of the bank; and in many cases suits have been brought against the bank upon the guaranties and indorsements thus made, and judgments rendered which have formed the basis of the proof upon which the master has found the amount of indebtedness of such creditors. And it is further urged that Mr. Holmes, from the time the bank went into liquidation, had no authority to bind the bank by an indorsement or guaranty; and that, therefore, these judgments, rendered upon such indorsements and guaranties, are void and inoperative as against shareholders. I am satisfied, however, from the proof, that the creditors who took the commercial paper of the bank did not take it in payment of the indebtedness due them from the bank, but took it as collateral to such indebtedness; and that only so far as such paper has proved collectible, and been made available by such creditors, should it be deemed a payment of the bank's indebtedness. I do not think the proof justifies the assumption that the creditors of the bank took this paper as absolute payment of their demands, but that they took it to be collected and applied upon their debts.

But if I had any doubt as to the terms on which these creditors took this paper, I should still deem the bank liable, because I have no doubt that Mr. Holmes, the chief executive officer of the bank, had the power to bind the bank and the shareholders by indorsements or guaranties, in the due course of business, as well after the vote to go into liquidation as before. *Bank* v. *Insurance Co.*, 104 U. S. 54;

*People's Bank* v. *National Bank*, 101 U. S. 181. Turning over this commercial paper upon the debts of the bank was not the contracting of a new debt, but an attempt to satisfy an old one; and the indorsements or guaranties of the paper only operated to keep the obligation of the bank alive, and give the holder recourse over against the bank in case the paper turned over was not collectible. The report of the master shows that, for the purpose of ascertaining the amount due each creditor, he took the judgments which had been rendered in favor of very many creditors against the bank on these guaranties and indorsements as the amount due such creditors, and has computed interest upon such judgments up to the time fixed in his report, for the purpose of determining the amount now due; while in the case of creditors who have not brought suit, the amount due them is ascertained by simply taking their credit balance from the books of the bank, and computing interest from the day the bank suspended, at the rate of 6 per cent. per annum. In these suits upon indorsements and guaranties judgment was rendered against the bank for the amount due on the indorsed or guarantied paper, with interest theron, and often at the rate of 10 per cent. from the time such paper was given, or from the time it was turned out to the creditors, whereby such creditors have obtained a compounding of interest upon their claims, thus giving to these judgment creditors an unequal claim as against the creditors who have not put their claims into judgment. I am, however, of opinion that the master, for the purpose of ascertaining the amount due each creditor, should have taken the amount shown to be due such creditor by the books, and, after deducting from that amount any payments which were made to the creditor by the bank, or collected by him from paper which he accepted, he should be allowed credit for the balance of such indebtedness from the date of the suspension of the bank to the time the account was taken, and thereby all creditors would be placed upon an equal footing. The case will therefore be again committed to the master, with directions to ascertain and report the total amount of the indebtedness of the bank at the time of its suspension, and the amount which has been paid on such indebtedness since that time; and to compute interest on the balance of such indebtedness remaining unpaid up to the first day of the present month of May; and report the aggregate amount of the same, with a finding as to the percentage which must be assessed against the shareholders for the purpose of paying such indebtedness, together with the costs of the receivership.

The exceptions to the master's report are overruled, except in so far as they are impliedly sustained by this re-reference to the master.