BROWN *v.* O'KEEFE, RECEIVER.

No. 575. Argued March 8, 1937.—Decided March 29, 1937.

Mr. Wm. Elmer Brown, Jr., pro se.

Mr. George P. Barse, with whom Messrs. Wm. B. Hunter, Ernest Russell, and James Louis Robertson were on the brief, for respondent.

MR. JUSTICE CARDOZO delivered the opinion of the Court.

In a suit for the enforcement of the personal liability imposed by the statute then in force upon shareholders in national banks, petitioner, the defendant in the suit, disclaimed liability, first, upon the ground that before the assessment of the shareholders his ownership of the shares was divested by the filing of a bankruptcy petition and the appointment of a trustee thereunder, and, second, upon the ground that if ownership continued, liability was extinguished by virtue of a discharge in bankruptcy. Whether the defense should have prevailed is now to be determined.

Petitioner was adjudicated a bankrupt on April 21, 1933, and on July 31, 1933, was granted a discharge. At the filing of the bankruptcy petition he was the owner of ten shares of stock of the Union National Bank of Atlantic City, New Jersey. Since September 30, 1931, the Union bank had been in course of voluntary liquidation (under

R. S. §§ 5220 and 5221; 12 U. S. C. §§ 181, 182), the Atlantic City National Bank being the liquidating agent. The terms of liquidation are defined by an agreement. Union sold to Atlantic all its assets of every kind for $1,686,977.63, which the buyer was to pay through an assumption of the seller's liabilities. The seller covenanted that the assets had a value equal to the price, and bound itself to pay the deficiency, if any should ensue. To this there was to be an exception in the case of the banking house and fixtures, which were to be taken at a valuation of $353,000, irrespective of the outcome. The amount of the seller's liability was to be fixed at the expiration of two years (i. e. on September 30, 1933), at which time all notes then uncollected were to be reckoned as losses. Before that time arrived, the liquidating bank met with troubles of its own. In January 1933, it was declared to be insolvent by the Comptroller of the Currency, and a receiver was appointed to wind up its affairs. In December, 1933, Union also was declared insolvent, and the receiver then appointed is the respondent in this court. Valuing the uncollected assets, the Comptroller found it necessary to enforce the personal liability laid upon the shareholders (R. S. § 5151; 12 U. S. C. § 63; 38 Stat. 273; 12 U. S. C., § 64), and by an order made and filed on January 8, 1934, assessed them to the amount of the par value of the shares. The receiver has sued the petitioner as one of the shareholders of Union to recover that assessment.

In defense of the suit petitioner asserts, as we have seen, that the ownership of the stock was divested by the bankruptcy, and also that liability was barred, if ownership remained. To estimate correctly the worth of these defenses we must have some other facts before us. The record shows that on October 27, 1933, by order of a referee, the trustee in bankruptcy was "authorized and di-

rected to abandon all title to and to disclaim all the interest of the bankrupt in" the ten shares of Union National Bank, now the subject of this suit. There is no suggestion that in the interval between adjudication and disclaimer, the trustee had done anything betokening acceptance. The record also shows, in the form of an affidavit accepted by the court, that the bankrupt in his list of liabilities included the liability to assessment on his shares of Union stock, and that in his schedule of creditors he included Union and Atlantic as well as the receiver for Atlantic, then in charge of its affairs. The same affidavit tells us that promptly upon the transfer of the assets in September, 1931, the liabilities assumed by Atlantic were paid to the last dollar; that at the time of the defendant's bankruptcy Union had no debts or liabilities except the debt or liability to the liquidating agent; and that even before the bankruptcy the fact had been definitely ascertained that the liquidation of the Union assets would result in a deficiency which would require an assessment of the stockholders up to the maximum amount of the par value of the shares.[1] The estimate was not impracticable, for about a year and seven months had passed since liqui-

[1] "At the time that I was adjudicated a bankrupt as aforesaid it had been determined and from then until now it has been definitely determined and known that said Union National Bank was insolvent. Said Union National Bank was throughout all of that time and ever since September 30, 1931, had been closed to business. Also at said time it had been determined and throughout said period it was definitely known that the assets of said Union National Bank were insufficient in value to liquidate at a sum equal to the value placed upon them by said agreement of September 30, 1931.

"Also at the time that I was adjudicated a bankrupt as aforesaid it had been determined and from then until now it has been definitely determined and known that an assessment and requisition upon the shareholders of said Union National Bank to the total par value of the amount of stock outstanding would be necessary to pay the debts and claims of said bank." Extracts from petitioner's affidavit.

dation had begun, and only about five months were left before it would be deemed to be complete.

Upon these facts, established by the pleadings and supporting affidavits, the receiver moved for judgment. The District Court held the defenses insufficient, and gave judgment against the defendant for the amount of the assessment. 16 F. Supp. 494. There was an appeal to the Court of Appeals for the Third Circuit where the judgment was affirmed. 85 F. (2d) 885. An important question of bankruptcy law being involved, a writ of certiorari issued from this court.

We dismiss with a few words the petitioner's contention that at the moment of the bankruptcy he lost the title to the shares, and became relieved thereby of the liabilities attendant upon ownership, though his name was left continuously on the stock book of the bank. Cf. *Richmond* v. *Irons,* 121 U. S. 27, 58; *Matteson* v. *Dent,* 176 U. S. 521. Whatever title or inchoate interest may have passed to the trustee was extinguished by relation as of the filing of the petition when the trustee informed the court that the shares were burdensome assets, and was directed by the court to abandon and disclaim them. *American File Co.* v. *Garrett,* 110 U. S. 288, 295; *Sparhawk* v. *Yerkes,* 142 U. S. 1, 13; *Sessions* v. *Romadka,* 145 U. S. 29, 39; *Dushane* v. *Beall,* 161 U. S. 513; *First National Bank* v. *Lasater,* 196 U. S. 115. In such case "the title stands as if no assignment had been made." *Sessions* v. *Romadka, supra,* p. 52. Cf. *Mills Novelty Co.* v. *Monarch Tool & Mfg. Co.,* 49 F. (2d) 28, 31; *In re Frazin,* 183 Fed. 28, 32; *Kirstein Holding Co.* v. *Bangor Veritas, Inc.,* 131 Me. 421, 424; 163 Atl. 655. A precise analogy is found in the law of gifts and legacies. Acceptance is presumed, but rejection leaves the title by relation as if the gift had not been made. See *Albany Hospital* v. *Albany Guardian Society,* 214 N. Y. 435, 441, 442; 108 N. E. 812, collecting many cases. For the purposes of the case at hand the result will

be the same whether title is conceived of as remaining in the bankrupt or as afterwards reverting. *Albany Hospital* v. *Albany Guardian Society, supra,* pp. 443, 445. In either view it is his after disclaimer by the trustee, wherever it may have been while acceptance was uncertain. *American File Co.* v. *Garrett, supra.*

The petitioner being held to be the owner of the shares, we pass to the closer question whether the effect of the discharge in bankruptcy was to extinguish the personal liability that was attached to his ownership as a statutory incident.

Liabilities are not discharged in bankruptcy unless claims thereon exist in favor of claimants whose identity is determinable at the date of the petition. *Zavelo* v. *Reeves,* 227 U. S. 625, 631; *Everett* v. *Judson,* 228 U. S. 474, 479. If the Union bank at that date had been a going concern, the possibility that it might later become insolvent or resort to liquidation, would not have furnished an occasion for stripping the shares of their statutory incidents by the device of a discharge in bankruptcy. In such a situation there would be no claim to be proved and no one capable of proving it. But at the date of this petition, the Union bank was not a going concern with the liability of shareholders a latent possibility. It was in course of liquidation by a voluntary liquidator. Not only was it in liquidation, but according to the evidence it was already known to be insolvent. Liquidation coupled with insolvency is the critical event which is capable of transforming a potential liability into one presently enforcible, as soon as a qualified claimant appears upon the scene. The method of winding up determines who the spokesman for the claim shall be. If a bank is in course of liquidation by the Comptroller of the Currency, the personal liability of stockholders is enforcible upon the direction of the Comptroller, at the suit of a receiver. Act of June 30, 1876, c. 156, § 1, 19 Stat. 63; 12 U. S. C. § 191. Cf. 12

U. S. C. §§ 63, 64. If the bank is in course of liquidation by a voluntary liquidator, the liability is enforcible by a creditor or creditors, suing for themselves and for others similarly situated. Act of June 30, 1876, c. 156, § 2, 19 Stat. 63; 12 U. S. C. § 65. Cf. 12 U. S. C. § 181. We have no occasion to inquire whether in the absence of an assessment by the Comptroller of the Currency the statutory liability may be enforced by a receiver through the medium of a claim in bankruptcy. Cf. *Erickson* v. *Richardson*, 86 F. (2d) 963. That question is not here. An assessment by the Comptroller, even if a necessary preliminary to a suit by a receiver when a bank is in the course of involuntary liquidation, is not a condition precedent, in cases of voluntary liquidation, to proceedings in behalf of creditors. No adequate reason occurs to us, and none, we think, is stated in the arguments of counsel, why a court of bankruptcy is then incompetent to liquidate the amount of the indebtedness effectively and speedily, and give relief accordingly. Cf. *Cunningham* v. *Commissioner of Banks*, 249 Mass. 401, 426; 144 N. E. 447; *United States* v. *Illinois Surety Co.*, 226 Fed. 653, 662–663.

In saying this we are not unmindful that a comprehensive suit in equity is commonly the proper remedy against shareholders where insolvency becomes manifest in voluntary liquidation. 12 U. S. C. § 65. The remedy does not exclude the presentation of a proof of claim in bankruptcy, the amount to be liquidated under the direction of the court by bill in equity or otherwise. *Cunningham* v. *Commissioner of Banks, supra; United States* v. *Illinois Surety Co., supra; King* v. *Pomeroy*, 121 Fed. 287; *Irons* v. *Manufacturer's Nat. Bank*, 17 Fed. 308, 314; 27 Fed. 591. Cf. *Hightower* v. *American Nat. Bank*, 263 U. S. 351; *Wyman* v. *Wallace*, 201 U. S. 230. By the mandate of the statute (Bankruptcy Act § 63b; 11 U. S. C. § 103b): "Unliquidated claims against the

bankrupt may, pursuant to application to the court, be liquidated in such manner as it shall direct, and may thereafter be proved and allowed against the estate." The result is to invest the court with a discretionary power that can be fitted to the needs of varying situations. *Maynard* v. *Elliott,* 283 U. S. 273. Cf. *Foust* v. *Munson S. S. Lines,* 299 U. S. 77, 83. A holding that a creditor is disabled from making proof in bankruptcy till a suit in equity against the shareholders has been brought to a decree would have unfortunate results. Today it is the bankrupt who is asserting the provable quality of such a claim in order to preserve for himself the benefit of a discharge. Tomorrow it may be a creditor who unless he is given that opportunity may lose his dividend from the assets and find his suit in equity illusory. In that predicament the malleable processes of courts of bankruptcy give assurance of a remedy that can be moulded and adapted to the needs of the occasion. *Cunningham* v. *Commissioner of Banks, supra.*

Liquidation being possible, the claim is not defeated though there was uncertainty as to its amount at the filing of the petition. *Maynard* v. *Elliott, supra.* Yet even the amount was certain, if we are to credit the defendant's statement. By this it appears that long before the bankruptcy the necessity for an assessment to the amount of the par value of the shares had become obvious to the liquidating agent and indeed to all concerned. The facts are far removed from those in *Miller* v. *Irving Trust Co.,* 296 U. S. 256, where the claim had its origin in the covenants of a lease. For historical causes such covenants are *sui generis* (*Manhattan Properties* v. *Irving Trust Co.,* 291 U. S. 320; *Gardiner* v. *Butler & Co.,* 245 U. S. 603), but the analogy is still imperfect if that distinction be ignored. There the only cause of action belonging to the claimant was for a deficiency that was

dependent upon unpredictable events.[2] Here the progress of the liquidation had already brought about a deficiency too great to be corrected by any unexpected windfall. This at least is the situation as the petitioner describes it. What infusion of contingency will vitiate a claim is at best a question of degree (*Maynard* v. *Elliott, supra,* p. 278), though there is a leaning toward allowance in aid of the purpose of the statute to relieve the honest debtor. *Williams* v. *U. S. Fidelity & G. Co.,* 236 U. S. 549, 554–555; *Central Trust Co. v. Chicago Auditorium Assn.,* 240 U. S. 581, 591. To all this we add that the uncertainty, if there was any, as to the exact amount of the assessment was to be dispelled at the farthest by September 30, 1933, less than six months later, for obligations then unpaid were to be classified as losses. Cf. Bankruptcy Act, § 57n; 11 U. S. C. § 93n. Upon the facts of this case the impediments to a prompt ascertainment of the liability of shareholders were unsubstantial, if not imaginary.

Other objections are made to the operation of the discharge, but they need not detain us long.

There is argument that a claim against a stockholder is not provable in bankruptcy for the reason that it is founded on a statutory liability not subject to discharge. Bankruptcy Act § 63; 11 U. S. C. § 103. True indeed it is that the liability is created by a statute, and not solely by agreement. *McClaine* v. *Rankin,* 197 U. S. 154, 159, 161; *Christopher* v. *Norvell,* 201 U. S. 216, 225, 226. No disclaimer by the stockholder would be effective to avoid it. Even so, the liability, created though it is by statute, is quasi-contractual in its origin and basis. *Chisholm* v. *Gilmer,* 299 U. S. 99, 102; *Shriver* v. *Woodbine Bank,* 285

---

[2] "Under the clause in question, it was, at the time the petition in bankruptcy was filed, uncertain, a mere matter of speculation, whether any liability ever would arise under it." *Miller* v. *Irving Trust Co.,* 296 U. S. 256, 258.

U. S. 467, 477; *Coffin Brothers & Co.* v. *Bennett*, 277 U. S. 29, 31; *Bernheimer* v. *Converse*, 206 U. S. 516, 529; *Christopher* v. *Norvell*, supra; *McClaine* v. *Rankin*, supra, p. 159; *McDonald* v. *Thompson*, 184 U. S. 71, 74. Cf. *Erickson* v. *Richardson*, supra. It is an incident affixed by law to the contract of membership between shareholder and bank. *Ibid*. A liability upon quasi-contract is one upon an "implied contract," and so provable in bankruptcy (Bankruptcy Act § 63 (4); 11 U. S. C. § 103 (4); *Crawford* v. *Burke*, 195 U. S. 176; *Tindle* v. *Birkett*, 205 U. S. 183; *Davis* v. *Aetna Acceptance Co.*, 293 U. S. 328, 331), if the other conditions of allowance are found to be fulfilled.

Finally argument is possible that the discharge is ineffective against the creditors of the bank for the reason that only a single creditor of Union was listed in the schedules. This, however, is unimportant if the creditor so listed (the liquidating agent) was in fact the only creditor, as the petitioner insists it was. Cf. *Longfield* v. *Minnesota Savings Bank*, 95 Minn. 54; 103 N. W. 706. If in fact there were other creditors whose names have been omitted, the burden rests on the respondent to make proof of such omission. *Hill* v. *Smith*, 260 U. S. 592, 595. The conclusion may well follow, if the omission shall be proved, that as to any creditors not listed the discharge is without effect.

Whether the petitioner will be able to make good the allegations of his answer, amplified and explained by the supporting affidavits, is not to be predicted now. Enough for present purposes that there are issues to be tried.

The decree should be reversed and the cause remanded for further proceedings in accord with this opinion.

*Reversed.*