## SCHRAM v. GERSON.
### No. 94.

District Court, E. D. Wisconsin.
Oct. 26, 1939.

Joseph V. Quarles (of Quarles, Spence, & Quarles), of Milwaukee, Wis., for plaintiff.

Maurice Weinstein (of Weinstein & Kline), of Milwaukee, Wis., for defendant.

DUFFY, District Judge.

This action, brought by the Receiver of the First National Bank—Detroit, has been presented to the court on a stipulated statement of facts.

The defendant, Punxy Gerson, was prior to March 7, 1933, the owner of 500 shares of the capital stock of the Detroit Bankers Company, which in turn was the owner of the capital stock of the First National Bank—Detroit. The liability of the stockholders of the Detroit Bankers Company for assessment on the stock of the First National Bank, Detroit, has been heretofore established, and is not an issue in this case.

The First National Bank, Detroit, hereafter referred to as the bank, closed its doors on February 11, 1933, and did not thereafter resume the conduct of normal banking business. The defendant, desiring to relieve himself of liability from an anticipated stock assessment, filed his petition in bankruptcy on March 7, 1933, and listed and scheduled the liability for assessment on said 500 shares. The defendant was duly adjudged bankrupt on said date. On March 13, 1933, the Comptroller of the Currency appointed a conservator for the bank. On May 11, 1933, said Comptroller declared the bank to be insolvent and appointed a receiver. On May 16, 1933, the Comptroller of the Currency levied an assessment on the stockholders of the bank, payable on July 31, 1933. On May 22, 1933, the defendant was discharged in bankruptcy, as a no-asset case. The order of discharge, among other things, recited: "It is therefore ordered that the said Punxy Gerson be discharged from all debts and claims which are made provable by said acts against his estate, and which existed on the 7th day of March, A.D. 1933, on which day the petition for adjudication was filed by him." The creditors of the defendant had until September 7, 1933, to file claims against said bankrupt estate. The amount of the assessment on the 500 shares of Detroit Bankers Company stock owned by the defendant is $7,027.89 with interest from July 31, 1933, at 5% per annum. The Detroit Bankers Company and the First National Bank—Detroit received notice or had notice of the fact that the defendant, Punxy Gerson, had filed a petition in bankruptcy on March 7, 1933, in the District Court of the United States for the Eastern District of Michigan, and that said defendant was discharged on May 22, 1933.

The only question for decision in this case is whether the discharge in bankruptcy obtained by the defendant on May 22, 1933, relieved him from liability for the assessment levied by the Comptroller on May 16, 1933.

Section 17 of the Bankruptcy Act, 11 U.S.C.A. § 35, provides: "* * * a discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except * * *." The exceptions have no application to this case.

Section 63, sub. a, 11 U.S.C.A. § 103, sub. a provides: "Debts of the bankrupt may be proved and allowed against his estate which are founded upon * * * (4) an open account, or a contract express or implied."

Plaintiff contends that although the defendant listed the liability which is the basis of this suit, he did so on a date prior to the time when the Comptroller of the Currency levied his assessment on the stockholders of the bank; that there was on said date no ascertainable claimant; and that the discharge obtained by the defendant therefore did not release him from liability for the assessment.

In the case of Brown v. O'Keefe, 300 U. S. 598, 57 S.Ct. 543, 546, 81 L.Ed. 827, the petitioner was adjudged bankrupt on April 21, 1933. He was discharged in bankruptcy on July 31, 1933. In December of 1933 the bank in question was declared insolvent, and a receiver appointed; and on January 8, 1934, the Comptroller assessed the stockholders. In that case the bankrupt had scheduled in his list of debts, the anticipated liability on the assessment on the ten shares of stock which he owned in the Union Bank. The Supreme Court, while recognizing the general rule that liabilities are not discharged in bankruptcy unless claims thereon exist in favor of a claimant whose identity is determinable at the date of the petition, nevertheless held that the discharge in bankruptcy released the debtor of any liability for the assessment. The court said: "If the Union Bank at that date had been a going concern, the possibility that it might later become insolvent or resort to liquidation would not have furnished an occasion for stripping the shares of their statutory incidents by the device of a discharge in bankruptcy. In such a situation there would be no claim to be proved and no one capable of proving it. But at the date of this petition the Union Bank

was not a going concern with the liability of shareholders a latent possibility. It was in course of liquidation by a voluntary liquidator. Not only was it in liquidation, but according to the evidence it was already known to be insolvent. Liquidation coupled with insolvency is the critical event which is capable of transforming a potential liability into one presently enforceable, as soon as a qualified claimant appears upon the scene. The method of winding up determines who the spokesman for the claim shall be." Again (300 U.S. on page 605, 57 S.Ct. on page 547, 81 L.Ed. 827): "Liquidation being possible, the claim is not defeated though there was uncertainty as to its amount at the filing of the petition. Maynard v. Elliott [283 U.S. 273, 51 S.Ct. 390, 75 L.Ed. 1028], supra. Yet even the amount was certain, if we are to credit the defendant's statement. By this it appears that long before the bankruptcy the necessity for an assessment to the amount of the par value of the shares had become obvious to the liquidating agent and indeed to all concerned." The court likewise held that a debtor could anticipate an assessment under the facts of that case, and that the liability was upon a quasi-contract and therefore came within the provision of Section 63 sub. a(4) with reference to an implied contract.

In a case which was decided by the Seventh Circuit Court of Appeals (Reaugh v. Hadley, 93 F.2d 29), the bank had closed its doors voluntarily on November 15, 1930, at which time the defendant was a shareholder. On January 5, 1931, the defendant was adjudged bankrupt, and eight days later the bank voted to enter upon voluntary liquidation. About a year later, on January 8, 1932, the Comptroller declared the bank insolvent and appointed a receiver, and on February 5, 1932, levied an assessment on the shareholders. The bankrupt was not discharged until June 30, 1933, and the court held that the discharge was effective in cancelling the liability upon the assessment which was levied one year and one month after the defendant was adjudged bankrupt. The court in that case said: "The assessment liability always existing under the banking act, became fixed in a definite amount on the 15th day of February, 1932, some fourteen months before the bankrupt was discharged. Under Brown v. O'Keefe, 300 U.S. 598, at page 606, 57 S.Ct. 543, 548, 81 L.Ed. 827, the claim, quasi contractual in its origin and basis, an incident affixed by law to the contract of membership between shareholder and bank, was provable in bankruptcy even before fixed in amount."

In the Brown v. O'Keefe case, supra, the bankrupt was discharged more than five months prior to the time when the Comptroller assessed the stockholders. In the Reaugh v. Hadley case the assessment was levied one month after the debtor was adjudged bankrupt, but his discharge did not take place until about sixteen months after the date when the assessment was levied. In the present case the assessment was levied about two months after the adjudication of bankruptcy, and six days prior to the time when the defendant was discharged in bankruptcy.

Is there any real basis for a distinction between the case at bar and the two cases which have been cited? True it is that the Supreme Court in the Brown v. O'Keefe case lays considerable stress upon the fact that the Union bank was not a going concern, and that it was in liquidation. In the case at bar the bank was not a going concern, as it had closed its doors nearly a month before the defendant filed his petition in bankruptcy. The court will take judicial notice of the fact that at that time many banks throughout the country were closing their doors, and there can be little question but that it was insolvent. In the Reaugh v. Hadley case the bank had closed its doors several months before the defendant was adjudged bankrupt, but it did not vote to enter upon voluntary liquidation until eight days after the bankruptcy petition was filed.

Apparently the plaintiff would not have commenced this action if the petition of the defendant to be adjudged bankrupt had been delayed until after the Comptroller levied his assessment. But this cannot be an important element. The defendant filed his petition, and was adjudged a bankrupt; there wasn't anything more for him to do; creditors had until September 7, 1933, to file their claims in case any assets of value were discovered; and his estate was still open for administration at the time the assessment was levied and also when it became due and payable.

It is, therefore, the opinion of this court that the discharge in bankruptcy obtained by this defendant on May 22, 1933, did relieve him of liability for the assessment which was levied by the Comptroller of the Currency on May 16, 1933, and this action must be dismissed.