In the Matter of IRA HAUPT & CO., a Limited Partnership, Bankrupt.

Gladys KNAPP, Bernard Klebanow, George Lewis, Michael Sloan, Lazarus S. Heyman, Egon H. Ottinger, Henry Schlenger and Harold L. Marantz, Kenneth Alan Marantz and Edith Lee Marantz, as Executors of the Estate of Charles Marantz, Appellants,

v.

Charles SELIGSON, as Trustee in Bankruptcy of Ira Haupt & Co.; the New York Stock Exchange, the Chase Manhattan Bank, First National City Bank, Morgan Guaranty Trust Co. of New York, Manufacturers Hanover Trust Company, William Brandt's Sons & Co., Ltd., Charterhouse Japhet & Thomasson Limited, and Kleinwort, Benson Limited, Appellees.

No. 480, Docket 31924.

United States Court of Appeals Second Circuit.

Argued June 10, 1968.

Decided June 25, 1968.

Max Freund, New York City, (Rosenman, Colin, Kaye, Petschek, Freund & Emil, New York City, Jerome E. Sharfman, New York City, of counsel), for appellants.

Herbert M. Wachtell, New York City (Wachtell, Lipton, Rosen, Katz & Kern, New York City, Theodore Gewertz, New York City, of counsel), for appellees Wm.

Brandt's Sons & Co., Ltd., Charterhouse Japhet & Thomasson Limited and Kleinwort, Benson Limited.

Leonard Zalkin, New York City (Zalkin & Cohen, New York City), for appellees First National City Bank and Morgan Guaranty Trust Company of New York.

Henry Landau, New York City (Simpson, Thacher & Bartlett, New York City), for appellee Manufacturers Hanover Trust Company.

A. Sidney Holderness, Jr., New York City (Milbank, Tweed, Hadley & McCloy, New York City), for appellees The Chase Manhattan Bank (National Association) and New York Stock Exchange.

Harvey R. Miller, New York City (Seligson & Morris, New York City, Robert Popper, New York City, of counsel), for trustee-appellee.

Before FRIENDLY, J. JOSEPH SMITH and KAUFMAN, Circuit Judges.

FRIENDLY, Circuit Judge:

This appeal by eight of the fourteen limited partners of Ira Haupt & Co., a brokerage firm in bankruptcy in the District Court for the Southern District of New York, is the latest of many controversies as to alleged causes of action on the part of the bankrupt against exchanges, banks and others under federal antitrust and securities laws and New York common law.

During the interval between the suspension of Haupt by the New York Stock Exchange (NYSE) on November 20, 1963 and the appointment of a trustee under the Bankruptcy Act,[1] some of the appellants began five actions on Haupt's behalf, the claims being largely derivative in character:

*Action No. 1*

An action in the Supreme Court of New York against NYSE, four banks,

1. Three of the limited partners, as creditors, filed an involuntary petition on March 23, 1964. Haupt, then under the control of a Liquidator designated under an agreement between Haupt, NYSE, and ten creditor banks countered on March 30 with a petition for an arrangement under Chapter XI. On June 26 a referee dismissed the Chapter XI petition and adjudicated the partnership a bankrupt. A trustee was not designated until October 6, 1964.

various brokerage firms, the Liquidator under an agreement between Haupt, NYSE, and ten creditor banks, and others, for an accounting and damages for injury resulting from usurpation of Haupt's business and assets under the allegedly illegal agreement;

*Action No. 2*

An action in the District Court for the Southern District of New York to recover treble damages of $33 million under the antitrust laws against New York Produce Exchange, New York Produce Exchange Clearing Association, Merrill, Lynch, Pierce, Fenner & Smith, Inc., and Bunge Corporation;[2]

*Action No. 3*

An action in the District Court for the Southern District of New York against NYSE to recover damages of $10 million on the ground that NYSE violated § 6 of the Securities Exchange Act of 1934 by failing to suspend Haupt after being told that it had permitted its indebtedness as a broker to exceed 2000% of the net capital employed in its business;

*Action No. 4*

An action in the District Court for the Southern District of New York against NYSE and Stock Clearing Corporation to recover treble damages of $2.1 million under the antitrust laws because of an alleged boycott;

*Action No. 5*

An action in the Supreme Court of New York against American Express Co. to recover damages of $51.823 million, because of the defendant's alleged responsibility for the issuance of worthless warehouse receipts by its wholly-owned subsidiary American Express Warehousing, Ltd.

Shortly after the appointment of Charles Seligson, Esq., as trustee in bankruptcy of Haupt in October 1964, Max Freund, Esq., of Rosenman, Colin, Kaye, Petschek, Freund & Emil, counsel for the limited partners, sent him copies of the complaints, and thereafter urged him to decide whether he wished to take over the actions. At the conclusion of a hearing on February 4, 1965, on an application for instructions, the Trustee announced that he would take over Actions 2 and 5[3] but was not prepared to make a recommendation as to the other three. The application for instructions was adjourned to March 19 but was then withdrawn.

Efforts by counsel for the limited partners to ascertain the Trustee's position with respect to the two federal actions against NYSE (3 and 4) led to an exchange of letters in November 1966. The Trustee, relying on a report of his special counsel, Weil, Gotshal & Manges, concluded it was not in the best interests of the estate for him to take over these suits or initiate similar ones; if the limited partners desired to continue the prosecution of the actions at their own expense and applied to the court for permission to do so, he would want to reserve a "right to determine if, as and when it became necessary, whether the continued prosecution thereof would be prejudicial to this estate and whether the actions should be abated." Mr. Freund pointed out that this created "the danger that if our clients proceed at their own expense, you may defeat their action at any time you elect and waste all the time, effort and money expended by them" and that this threat "can only serve to discourage their proceeding with these actions." The Trustee responded that while at the time he could "see nothing prejudicial to the continuance of these actions by your clients," he wished to be in a position to protect the estate if prejudice should arise. Action No. 1 presented a further problem. During the period when the Liquidator was in charge, Haupt had served a demand for arbitration before NYSE and on its motion the

2. See Klebanow v. New York Produce Exchange, 344 F.2d 294 (2 Cir. 1965).

3. The Trustee has instituted suits for the relief sought by the limited partners on behalf of Haupt in these actions, and the plaintiffs have dropped all derivative claims in their suits.

state court had stayed the action pending arbitration. In November and again in December 1964, Freund requested the Trustee to revoke the demand since arbitration of an action against NYSE "under the Exchange's rules and before its forum is not in the interest of the estate." The Trustee agreed and inquired how to effect the revocation. Freund responded, but nothing occurred. Late in 1966 correspondence about this claim was renewed. On February 2, 1967, the Trustee advised he had concluded that it would not be in the best interests of the estate to prosecute this claim but that the plaintiffs might do so on the same conditions he had announced as to actions 3 and 4; since he had decided against prosecuting the action, he did not think it would be appropriate for him to attempt to revoke the demand for arbitration.

The limited partners thereupon applied to the Referee for relief. They proposed that the Trustee revoke the demand for arbitration made on behalf of Haupt in Action No. 1 and sell them all his right, title and interest in Actions 1, 3 and 4. In the event of recovery in any action, the limited partners would pay the Trustee one-third of the balance remaining after reimbursement of expenses paid by them and a fee to their counsel equal to one-third of the amount remaining after deduction of expenses. Hearing was had on notice to all creditors. Written objections were filed by the Trustee, by NYSE and banks that were defendants in the actions, and by other banks that were not. Numerous affidavits and counter-affidavits were filed. No purpose would be served by summarizing them. As the Referee rightly said, the papers "are replete with invective and mutual recrimination"; we add that some of the objections, such as that the proposed purchase would violate 18 U.S.C. § 155, § 488 of the New York Judiciary Law, McKinney's Consol.Laws,

c. 30 and Canon 10 of Professional Ethics are so patently without basis that it is surprising to find them seriously made, at least by the Trustee.[4]

The operative portion of the Referee's opinion is brief. He rejected the proposal "for the simple reason that the proposed terms are unfair to the estate." If the causes of action "have merit and will result in a substantial recovery," the terms proposed by the Trustee, namely, that the applicants prosecute them at their expense for the benefit of the estate and subject to a motion by the Trustee to abate, are "eminently fair and reasonable." If, on the other hand, "the claims are without merit, no reason exists why this estate should, in any way support the prosecution of frivolous litigation"— which, of course, the applicants had not asked. Some might view the Referee's approach as not merely "simple" but simplistic. Such possibilities as that the claims might not be quite so white or quite so black as depicted; that the success of the litigation might depend on making extensive discovery and carrying close issues of fact and law through trial and appeal against well-financed defendants; that this course might not be overly attractive to the plaintiffs on the heads-I-win, tails-you-lose, Sword-of-Damocles basis proposed by the Trustee; and that, with such large sums at stake, some effort might be devoted to an attempt to work out a solution that was better for the estate either than accepting the proposal or gambling that despite their protestations the applicants would proceed under the Trustee's formula, were not considered. The order authorized the applicants to prosecute the actions at their own expense, with the gross proceeds to be paid the Trustee and expenses of the applicants and compensation and expenses of their attorneys to be paid only as allowed by the bankruptcy court. The Trustee was authorized, but not directed, to execute "a document in

---

4. The short answer, of course, is that the proposal contemplated a sale of the claims to the eight limited partners, not to their lawyers; once the sale was made, the ar-

rangements for compensation between the owners of the claims and their counsel would not be within either the letter or the spirit of the prohibition cited.

form satisfactory to him for the purpose of attempting to revoke the demand for arbitration made on behalf of Ira Haupt & Co." in Action No. 1. Finally, the relief granted was without prejudice to the right of the Trustee to apply to the bankruptcy court for abatement. The District Court denied a petition to review, holding that it could interfere only if the Referee's action was an abuse of discretion and that it was not.

Even on the narrow basis on which the Referee considered the issue, it would seem hard to justify his order in the absence of a finding that the chances that applicants would prosecute the actions for the benefit of the estate even on the unattractive conditions imposed were sufficiently great that the estate would do better to accept the hazard of non-prosecution than sell for one-third of the recovery after expenses and attorney's fees,[5] or a conclusion that the claims should be sold only at public auction, see General Order 18 and Bankruptcy Rule 14(c) of the District Court for the Southern and Eastern Districts of New York—a seemingly unlikely possibility for assets of this sort. The general discussion in Meyer v. Fleming, 327 U.S. 161, 165–168, 66 S.Ct. 382, 90 L.Ed. 595 (1946), of the possibilities available to a trustee with respect to derivative litigation instituted prior to his appointment does not speak to the concrete problem here presented; litigants like Mr. Walter Meyer, who was as intent on establishing a principle as on obtaining monetary recovery and had the resources to gratify that desire, are not found every day.

■■ However, we do not find it necessary to decide this point. The application was not limited to the precise proposal but included the usual prayer "that Applicants have such other and further relief as is just and proper." A referee in bankruptcy is not simply an umpire calling balls and strikes. He has an affirmative responsibility for the proper handling of the estate, and that is not always discharged merely by ruling on papers the parties have presented to him. Cf. In re Prindible, 115 F.2d 21, 24–25 (3 Cir. 1940); 2 Collier, Bankruptcy ¶ 30.03. Particularly in light of his knowledge of the acerbities that had unfortunately characterized the relationship of the Trustee and Mr. Freund from the beginning, see In re Ira Haupt & Co. (Knapp v. Seligson), 361 F.2d 164 (2 Cir. 1966), and prevented any meaningful dialogue between them, it was incumbent on the Referee to see that these personal difficulties did not work detriment to the estate or the bankrupt.

■■ The Referee should thus have considered the application as raising again the entire question of the proper handling of the claims, which had come before him on the Trustee's application for instructions in February 1965 but had never been resolved. In a matter of this importance he should not simply accept the Trustee's conclusion that the claims are not worthy of prosecution; he should at least examine the report the Trustee has received from special counsel on Actions Nos. 3 and 4 and ascertain the basis for the Trustee's unfavorable view of Action No. 1. If the Referee should concur, he would then be under a duty to direct the Trustee to abandon.[6]

■ Apparent misunderstanding of the law of abandonment, see 4A Collier, Bankruptcy ¶ 70.42 (14th ed. 1967), may lie at the bottom of the difficulties that have arisen. Despite the absence of any provision in the statute, "the courts have always recognized that a trustee is under no duty to retain the title to a piece of property or a cause of action that is so heavily encumbered, or so costly in preserving or securing, that it does not promise any benefit to the funds availa-

---

5. Appraisal of this possibility would probably require some forecast whether the Trustee's prospects on the two claims he is prosecuting and in action he had brought against bonding and insurance companies are sufficient that recoveries in the actions here in issue might be available, a least in part, to the limited partners.

6. Abandonment would vest the bankrupt with the right to seek revocation of the demand for arbitration in Action No. 1.

ble for distribution." Id. ¶ 70.42 [1] at 501. When he reaches such a conclusion, he should submit the matter for determination by the referee. Id. ¶ 70.43; In re Humeston, 83 F.2d 187 (2 Cir. 1936); Bankruptcy Rule 14(d) of the Southern and Eastern Districts of New York. While the trustee must be accorded a reasonable period for investigation, there comes a time when he must fish or cut bait. It would be wholly contrary to the policy of the Bankruptcy Act to permit a trustee to assert his title to an asset against the bankrupt under § 70a, do nothing to realize on it, yet forever prevent the bankrupt from doing so. Cf. Sparhawk v. Yerkes, 142 U.S. 1, 12 S.Ct. 104, 35 L.Ed. 915 (1891); In re Wattley, 62 F.2d 828 (2 Cir. 1933). Cases such as Schmidt v. Esquire, Inc., 210 F.2d 908 (7 Cir.), cert. denied, 348 U.S. 819, 75 S.Ct. 31, 99 L.Ed. 646 (1954), and Gochenour v. George & Frances Ball Foundation, 35 F.Supp. 508 (S.D.Ind.1940), aff'd per curiam, 117 F.2d 259 (7 Cir.), cert. denied, 313 U.S. 566, 61 S.Ct. 942, 85 L. Ed. 1526 (1941), cited by the District Court, are in no way contra; they hold only that the fact the trustee has failed to prosecute a claim does not permit a would-be plaintiff to bring suit without first petitioning the bankruptcy court for an order abandoning the property.[7] In re Prudence Co., 96 F.2d 157 (2 Cir. 1938), also cited, is even less helpful to the Trustee; it holds that where trustees allow the bankrupt's attorney to continue prosecution of a suit for the benefit of the estate, they are bound by a previous contingent fee contract. Any proper interest of the trustee can be protected by his right to seek abatement if the prosecution should threaten prejudice to the estate. We agree that the Trustee here could properly insist on retaining this as incident to a sale[8] or even an abandonment; the notion that once the bankruptcy court abandons property, it is "as though the trustee had never owned or claimed it," Note, Abandonment of Assets by a Trustee in Bankruptcy, 53 Colum.L.Rev. 415, 425 (1953), has its source in judicial utterances directed at entirely different situations. See, e. g., Brown v. O'Keefe, 300 U.S. 598–602, 57 S.Ct. 543, 81 L.Ed. 827 (1937); Rosenblum v. Dingfelder, 111 F. 2d 406 (2 Cir. 1940) (Clark, J., noting, at 409, that the doctrine is a fiction to be applied because it "fits this case appropriately") and should not prevent us from reaching the fairest solution. Wallace v. Lawrence Warehouse Co., 338 F. 2d 392, 394–395 and n. 2 (9 Cir. 1964).

We recognize that abandonment of the claims to the bankrupt would mean the estate will get nothing, rather than the one-third of the balance after expenses and attorney's fees payable to it under applicants' proposal. We perceive also that abandonment may not be wholly attractive to the applicants since management of the actions presumably would vest in the general partners if they are willing and able to pursue them. It would not be altogether a misfortune if realization of these hard facts should lead the Trustee and the applicants to an agreement, perhaps more favorable to the estate than the one proposed. That, however, is not our affair. It is enough for decision that while a trustee has a wide variety of choices as to claims of the bankrupt—to prosecute, allow another to prosecute on mutually satisfactory terms, sell, or abandon, he may not simply do nothing and thereby permit a possibly valid claim to evaporate and a defendant to escape liability.

---

7. Gochenour v. Cleveland Terminals Bldg. Corp., 118 F.2d 89 (6 Cir. 1941), cited by the appellees, may be similarly distinguished. In re Olsen, 70 F.2d 253 (2 Cir. 1934) and Sherman v. Buckley, 119 F.2d 280 (2 Cir.), cert. denied, 314 U.S. 657, 62 S.Ct. 110, 86 L.Ed. 527 (1941), are even further from the point.

8. Since appellants are right, however, in saying that such a reservation necessarily depresses the price, it would seem possible, after so many years of study, for the Trustee at least to delimit the areas in which he foresees the likelihood of prejudice.

The judgment of the District Court is reversed and the cause remanded with instructions to remand to the Referee for proceedings not inconsistent with this opinion.