In the Matter of Robert Jerome SCHAE-
FER and Ramona Joan Schaefer, for-
merly engaged in business as Action
Realty, Bankrupts-Appellants,

v.

Howard L. SMITH and A. S. Blauw,
Creditors-Appellees.

Nos. 72-1276, 72-1277.

United States Court of Appeals,
Tenth Circuit.

Dec. 11, 1972.

Thomas Smiley and O. Louis Puccini, Jr., Albuquerque, N. M., on brief for bankrupts-appellants.

Brian W. Copple, Roswell, N. M., on brief for creditors-appellees.

Before LEWIS, Chief Judge, and PICKETT and McWILLIAMS, Circuit Judges.

PICKETT, Circuit Judge.

Schaefer, the bankrupt, appeals from a judgment of the United States District Court for the District of New Mexico affirming a bankruptcy referee's finding that certain contingent contractual obligations for the repurchase of corporate stock were not provable and therefore not dischargeable in bankruptcy. We conclude that the contractual obligations are provable, allowable, and therefore dischargeable.

In January of 1969 Schaefer sold to each appellee, Blauw and Smith, three-fourths of a share of common stock in a Texas corporation for which Schaefer received $5,000 from each purchaser. As part of the transaction Schaefer agreed in writing to repurchase the stock for $5,500 if Blauw and Smith had not received a return of $5,000 each on their investments prior to specified dates in January 1972. On February 8, 1971, Schaefer and his wife filed a petition in bankruptcy and were duly adjudicated bankrupts. The schedules filed with the petition in bankruptcy listed Blauw and Smith as unsecured creditors. Blauw and Smith instituted proceedings before the referee in bankruptcy for a determination that their contingent claims were not allowable.[1] As there were no assets in the bankruptcy estate, the obvious purpose of this action was to prevent the discharge of Schaefer's liability on the repurchase contracts. The referee found that Schaefer's contingent liability on the contracts was beyond the control of Blauw and Smith and was dependent upon events so fortuitous as to make it uncertain whether liability would ever attach, and concluded that because the contingent liability could not be reasonably estimated it was not allowable and therefore was not dischargeable. The district court affirmed.

Contingent claims such as are questioned herein are provable under § 63a(8) of the Bankruptcy Act, 11 U.S.C. § 103(a)(8) (1970).[2] Section 63d of the Act, however, provides that if a contingent claim is not allowed, it is deemed not provable *ab initio*. See 3A Collier on Bankruptcy ¶¶ 63.30 and 63.36 (14th ed. 1971). Since only provable claims are discharged in bankruptcy (§ 17a, Bankruptcy Act, 11 U.S.C. § 35(a) (1970)), a contingent claim must be allowable before it can be discharged. See St. Paul-Mercury Indemnity Co. of St. Paul v. Dale, 70 S.D. 137, 15 N.W.2d 577 (1944).

The requirements for allowability of contingent claims are found in § 57d of the Act:

"[A] . . . contingent claim shall not be allowed unless liquidated or the amount thereof estimated in the manner and within the time directed by the court; and such claim shall not be allowed if the court shall determine that it is not capable of liquidation or

1. This procedure is authorized by the 1970 amendment to Section 17 of the Bankruptcy Act, 11 U.S.C. § 35(c)(1) (1970), which provides:
"The bankrupt or any creditor may file an application with the court for the determination of the dischargeability of any debt." See 1970 U.S.Code Cong. & Ad.News, pp. 1156 and 4162–63.

2. Section 63a(8) was added to the Bankruptcy Act by the Chandler Act, Pub.L. 75–696, 52 Stat. 873 (1938). The 1938 amendments were a codification of the decisional law as developed by the United States Supreme Court. Brown v. O'Keefe, 300 U.S. 598, 57 S.Ct. 543, 81 L.Ed. 827 (1937); Maynard v. Elliott, 283 U.S. 273, 51 S.Ct. 390, 75 L.Ed. 1028 (1930); Central Trust Co. v. Chicago Auditorium Assn., 240 U.S. 581, 36 S.Ct. 412, 60 L.Ed. 811 (1916); Williams v. U. S. Fidelity and Guaranty Co., 236 U.S. 549, 35 S.Ct. 289, 59 L.Ed. 713 (1915). See 3 Collier on Bankruptcy ¶ 57.15 (14th ed. 1971).

of reasonable estimation or that such liquidation or estimation would unduly delay the administration of the estate. . . . ."

The extent of liability on the Blauw and Smith contracts could not be absolutely determined for almost a year after the bankruptcy petition was filed. While it is important in bankruptcy that estates be administered expeditiously and the assets distributed to creditors, it is equally important that effect be given to the purpose of the Act, "to relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh free from" the consequences of financial misfortunes. *Williams*, supra, 236 U.S. at 554–555, 35 S.Ct. at 290. In an appropriate case a one year period could very possibly "unduly delay the administration of the estate." Under other circumstances, however, when considered with all other factors, a contingent claim should not be disallowed solely on the basis of administrative delay. See In re William Rakestraw Co., 450 F.2d 6 (9th Cir. 1971); 3 Collier on Bankruptcy ¶ 57.15 (14th ed. 1971). Here there are no assets in the bankruptcy estate. Time is of little consequence as payment to creditors will not be delayed or affected by the allowance of the claims. The unliquidated nature of a claim will not bar its provability under § 63 and will not prevent its allowability unless liquidation will require too much time and expense. Bankruptcy Act, § 57d, 11 U.S.C. § 93(d) (1970).

The amounts of both claims are fixed at $5,500 each. No estimation is necessary. The contingency is not "dependent upon an event so fortuitous as to make it uncertain whether liability will ever attach." [3]

In Williams v. U. S. Fidelity and Guaranty Co., 236 U.S. 549, 554–555, 35 S.Ct. 289, 290, 59 L.Ed. 713 (1915), the Court said:

"It is the purpose of the Bankrupt Act to convert the assets of the bankrupt into cash for distribution among creditors and then to relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes." [4]

See 3 Collier on Bankruptcy ¶ 57.15 (14th ed. 1971). Later the Supreme Court in Brown v. O'Keefe, 300 U.S. 598, 606, 57 S.Ct. 543, 548, 81 L.Ed. 827 (1937), further recognizing the allowability of appropriate contingent claims, stated:

"What infusion of contingency will vitiate a claim is at best a question of degree . . . though there is a leaning toward allowance in aid of the purpose of the statute to relieve the honest debtor."

Allowance and discharge of the claims herein further this policy. Reversed and remanded with instructions to allow the claims.

---

3. See Maynard v. Elliott, 283 U.S. 273, 278, 51 S.Ct. 390, 75 L.Ed. 1028 (1930).

4. In the *Williams* case, the bankrupt's surety sued him ten years after the adjudication in bankruptcy to recover a loss suffered because of the surety arrangement. The trial court held that since the bankrupt's obligation to the surety was contingent and might never have arisen it was not provable. In rejecting this argument the Supreme Court stated:

"If the doctrine announced by the court below . . . is correct, a discharge in bankruptcy may have very small value for the luckless debtor who has faithfully tried to secure his creditors against loss. . . ." 236 U.S. at 554, 35 S.Ct. at 290.