In re Robert Lemuel CRUSETURNER, and Sandra Anderson Cruseturner, Debtors.

In re Lorenzo Russell REID, Retha Mae Reid, Debtors.

In re Scott A. NELSON, Shanna Lee Nelson, Debtors.

Bankruptcy Nos. 80-00133, 80-00598 and 80-00800.

United States Bankruptcy Court, D. Utah.

Jan. 29, 1981.

James C. Jenkins, Logan, Utah, for First Nat. Bank of Logan.

Pete N. Vlahos, Ogden, Utah, for debtors, Robert L. and Sandra Cruseturner.

Laurie Basset, for Federal Emp. Credit Union.

J. Scott Buehler, Ogden, Utah, for debtors, Lorenzo Russell and Retha Mae Reid.

Robert Jensen, Salt Lake City, Utah, for Bank of Utah.

Parley Baldwin, Ogden, Utah, for debtors, Scott A. and Shanna Lee Nelson.

## MEMORANDUM OPINION

RALPH R. MABEY, Bankruptcy Judge.

The common issues raised in these cases are whether 11 U.S.C. § 722 allows redemption to be made by payment in installments and to what extent, if any, the automatic stay of 11 U.S.C. § 362 prevents action against property of the debtor which, either by the trustee's abandonment or otherwise, is no longer property of the estate. A study of these issues leads the Court to conclude that redemptions under Section 722 cannot be made via installment payments, and that debtor's property which is no longer property of the estate is, nevertheless, entitled to separate protection of

the automatic stay under 11 U.S.C. § 362(a)(5). These conclusions are based on the following facts and analysis.

## FACTS

In *Cruseturner*, the Court entered an order, without opposition, allowing the debtors to redeem a motor vehicle by payments in installments. Although the ordered payments have been kept current, the creditor filed a motion objecting to the allowance of redemption via installment payments.

In the remaining cases now before the Court, the debtors requested the opportunity to redeem in installments; the creditors objected. The debtors testified that they were unable to pay the fair market value of the collateral in a lump sum, and therefore, if redemption in installments were not allowed, they would not be able to exercise their rights to redeem.

## REDEMPTION

Section 722 of the Bankruptcy Code, 11 U.S.C. § 722, affords the debtor the right to redeem tangible personal property used primarily for personal, family, or household use if such property has been exempted under 11 U.S.C. § 522 or has been abandoned under 11 U.S.C. § 554. No right of redemption existed under previous bankruptcy law, and thus, the interpretation of this section is not aided by a background of prior case law. A close examination of the legislative history of Section 722, however, sheds some light not only on its intended interpretation, but also on its somewhat confusing interaction with and distinction from 11 U.S.C. § 524(c) which governs so-called "reaffirmations."[1] From the initial drafting of the new law forward, these sources clearly support a finding that the redemption right under Section 722 must be exercised by a lump sum payment of the total allowed secured claim unless creditor and debtor agree to installment payments,

which agreement would then be subject, in the case of individuals with consumer debts, to court approval.

The extension of control of the bankruptcy court over redemptions and reaffirmations of the debtor was originally contemplated in the 1973 Commission Report of the congressionally appointed Commission on the Bankruptcy Laws of the United States. Concern was expressed by the Commission that sufficient protection was not available to the debtor under the then existing bankruptcy laws to insure the efficacy of his discharge. It felt that through the use of reaffirmations, creditors were circumventing the debtor's discharge and frustrating the bankruptcy law's goal of rehabilitation. The Commission therefore recommended that "reaffirmations not be enforceable and that the bankruptcy court be given jurisdiction of all disputes concerning the discharge." Report of the Commission on the Bankruptcy Laws of the United States, H.R.Doc.No.93–137, 93d Cong., 1st Sess., Pt. I, at 169 (1973). In the realistic recognition that debtors must have some means to repay certain secured creditors in order to retain essential property, however, the Commission recommended that in furtherance of "the rehabilitative goal of the discharge," the debtor "be allowed to redeem property abandoned to or set aside to the debtor as exempt, which secures a dischargeable consumer debt on payment of the fair market value of the property or the amount of the debt, if less." *Id.* at 173. The Commission concluded that this would provide the creditor with what it was entitled to while removing the creditor's coercive power over the debtor. In furtherance of its proposals, the Commission drafted provisions allowing certain redemptions and prohibiting reaffirmations. As the provision governing redemptions remained essentially unchanged from this point forward through the legislative process, the Commission's notes provide significant informa-

1. As ably pointed out in *Vinson v. Farmers Home Administration*, 5 B.R. 32 CCH Bankruptcy Law Reports ' 67,579 (N.D.Ga.1980), the term reaffirmation issnot used in the statute. Section 524(c) refers rather to an "agree-ment between a holder of a claim and the debtor." The term "reaffirmation" is therefore used in this opinion only for purposes of convenience and clarity.

tion concerning the intent behind 11 U.S.C. § 722, the enacted redemption provision.

Although the recommended action on reaffirmation agreements was a complete bar, the Commission proposed that some provision be made to allow for the enforcement of a redemption agreement to pay the fair market value of the property. This recommended exception to the bar on the enforceability of agreements between debtors and creditors on pre-petition debts was explained as follows: "Hopefully, this will enable debtors *to work out gradual payment of the amount owed*, but not in excess of the fair market value of the property." (Emphasis added.) Report of the Commission on the Bankruptcy Laws of the United States, H.R.Doc.No.93–137, *supra* at 174. This statement appears to contemplate some sort of redemption in installments, or gradual payment plan. The footnotes to the main text, however, clarify its meaning:

> The debtor will often not be in a position to pay in cash the fair market value; therefore, it is important that the debtor be able to enter into a binding agreement with the secured party whereby the debtor agrees to pay the fair market value. This, in effect, is a source of financing.

Thus, although the Commission contemplated "redemptions in installments," it did so only when supported by an agreement, voluntary by its very nature, between the debtor and his creditor. Although reaffirmations would not be countenanced, agreements akin to reaffirmations were to be allowed on an installment basis only when no more than the fair market value of the property was paid, thus making it technically a negotiated redemption. In effect, then, the Commission advocated barring all reaffirmations, except reaffirmations of certain secured debts for no more than the market value. In addition, the Commission proposed granting the debtor power to redeem property, even absent an agreement with the creditor, under a separate provision.

The provisions drafted by the Commission to carry out its recommendations are found in Sections 4–504 and 4–507 in Part II of the Commission Report. Section 4–504(a) gives the debtor the right to redeem property abandoned by the trustee or claimed as exempt by paying the fair market value of the property or the claim, if less. The only significant changes made in this provision as finally enacted limited redeemable property to "tangible personal property intended primarily for personal, family or household use" and further limited the availability of redemption to "individual debtors." It also gave the debtor a right to redeem despite any previous waiver made of the right. *See* 11 U.S.C. § 722. These changes, however, have no effect on the problem before the Court, and thus, do not dilute the potency of the Commission's comments.

Section 4–504(b) of the Commission's proposal allowed for an agreement providing for redemption between the debtor and the creditor to be enforceable against the debtor despite the prohibition on reaffirmations. The Commission's notes to this proposed provision state:

> Subdivision (b) excepts an agreement under subdivision (a) from § 4–507, which denies effectiveness to the reaffirmation of any discharged debt. In most cases agreement will be reached by, first, bargaining to determine the fair market value of the liened property and, second, *the creditor's acceptance of the debtor's agreement to make periodic payments or the debtor's payment in cash*, perhaps obtained by a loan from a third party taking a security interest in the property involved ... If the debtor and creditor are unable to agree on the fair market value of the property, ... the debtor may apply to the court to enforce his right under subdivision (a). In such a proceeding, the court would determine the question of fair market value. (Emphasis added.)

Report of the Commission on the Bankruptcy Laws of the United States, H.R.Doc.No. 93–137, 93d Cong., 1st Sess., Pt. II, at 131 (1973). Thus, the Commission foresaw, and Section 722 provides, for redemption in installments only where agreed to by the creditor. Otherwise, the debtor must pay

in cash; perhaps, as the Commission suggested by refinancing with a third party. The Court may set the fair market value in order that the debtor may exercise his right to redeem, but is limited to that determination and may not force an installment redemption on a creditor. Additionally, it should be noted that the Commission contemplated that "fair market value" would be "the net amount the creditor would receive were he to repossess the collateral and dispose of it as permitted by the applicable nonbankruptcy law." *Id.* at 131.

Section 4–507 of the Commission draft prohibited the reaffirmation of any dischargeable debt. Exception was made, in the way of clarification, for agreements covering redemptions and agreements settling the dischargeability of a debt, both of which are not technically reaffirmations. These differences in classification were spelled out in the notes to Section 4–507 in the Commission Report:

> The reference to provisions in §§ 4–504(b) and 4–506(b) as exceptions to the rule established by the first sentence of this subdivision is solely for the purpose of clarity. Neither section upholds the reaffirmation of an extinguished debt. Section 4–504(b) permits the enforcement of an agreement which in effect enables the debtor to purchase collateral securing a dischargeable consumer debt. Section 4–506(b) allows, with safeguards protecting the debtor, the enforcement of an agreement settling whether or not a debt is dischargeable.

*Id.* at 143.

A period of intensive study of the proposed bankruptcy legislation followed presentation of the Commission Report to the House and Senate where an alternate proposal of the National Conference of Bankruptcy Judges was considered along with the Commission's recommendations. A proposed bill was then presented to the House as H.R.8200 during the first session of the 95th Congress. Section 722 of this proposed bill was drafted almost exactly as finally enacted, and although various points of the bill were hotly contested subsequent to its introduction, provisions governing redemptions were enacted essentially undebated and unchanged. A study of both the House and Senate reports on proposed Sections 722 and 524(c) ratifies the Commission's recommendation that redemptions should be allowed in installments only where an agreement is reached between debtor and creditor.

The report accompanying H.R.8200 paralleled the Commission's report in citing as one of the major problems in consumer bankruptcies the fact that creditor techniques including forced reaffirmations have combined to circumvent the debtor's discharge. H.R.Rep.No.95–595, 95th Cong., 1st Sess., at 117 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5963. Following directly the Commission's recommendations, the bill proposed to eliminate reaffirmations, allowing, under proposed Section 524(c), effectiveness only to agreements entered into in settlement of nondischargeability litigation and agreements providing for redemption. Further paralleling the Commission's recommendations, a power of redemption was proposed for the debtor to allow for the protection of exempt and necessary property. This proposed right of redemption was seen as a compromise between the rights of the creditor and the debtor:

> It allows the debtor to retain the necessary property and avoid high replacement costs, and does not prevent the creditor from obtaining what he is entitled to under the terms of the contract.

*Id.* at 127, U.S.Code Cong. & Admin.News 1978, p. 6088. In explanation of the intended scope of the proposed provision, the report's section by section analysis had this to say about proposed Section 722:

> This section is new and is broader than rights of redemption under the Uniform Commercial Code. It authorizes an individual debtor to redeem tangible personal property intended primarily for personal, family, or household use, from a lien securing a dischargeable consumer debt. It applies only if the debtor's interest in the property is exempt or has been aban-

doned. The right to redeem extends to the whole of the property, not just the debtor's exempt interest in it ... The redemption is accomplished by paying the holder of the lien the amount of the allowed claim secured by the lien. The provision amounts to a right of first refusal for the debtor in consumer goods that might otherwise be repossessed. The right of redemption under this section is not waivable.

*Id.* at 380, U.S.Code Cong. & Admin.News 1978, p. 6336.

The parallel bill introduced in the Senate, S.2266, altered the House's proposed Section 722 in some respects. Proposed Section 524(c) limiting reaffirmations was identical to the House version.

The Senate version of Section 722 limited the power to redeem to non-purchase money interests, specified the nonassignability of the right, and clearly placed on the debtor the burden of proving the fair market value. For purposes of our discussion, these differences are not important. The Senate Report, in discussing proposed Section 722, explained:

This section is new and is broader than rights of redemption under the Uniform Commercial Code. It authorizes an individual debtor to redeem tangible personal property intended primarily for personal, family, or household use, from a lien securing a nonpurchase money dischargeable consumer debt. It applies only if the debtor's interest in the property is exempt or has been abandoned.

This right to redeem is a very substantial change from current law. *To prevent abuses such as may occur when the debtor deliberately allows the property to depreciate in value, the debtor will be required to pay the fair market value of the goods or the amount of the claim if the claim is less.* The right is personal to the debtor and not assignable. (Emphasis added.)

S.Rep.No.95–989, 95th Cong., 2d Sess., at 95 (1978), U.S.Code Cong. & Admin.News 1978, p. 5881.

These comments, as do the comments of the House Report, evidence a concern for both the rights of the debtor and the creditor, and an attempt to balance those rights fairly in order to protect each interest. In addition to noting the benefit provided to the debtor, the House Report cites the provision as insuring that the creditor will obtain what is due it, and the Senate Report specifically states that the provision is designed to prevent abuses which cause the creditor to be unable to obtain the full amount of its security. These comments evidence acceptance of the equilibrium established in the Commission's recommendation: the debtor should be given an enforceable right of redemption despite creditor protest; however, redemption by installment payments should not be forced on the creditor, but may be approved only if accompanied by requisite creditor consent. Further, the fact that both Sections 722 and 524(c) were taken directly from the Commission's proposal manifests acceptance of the Commission viewpoint and underlying recommendations concerning redemption and reaffirmation. It was not until the floor debate that Section 524(c) was liberalized by an amendment that affected neither the content or intent of Section 722.

Following the proposals found in H.R. 8200 and S.2266, there ensued debates between the House and Senate over the limitations on reaffirmations which ought to be included in the new law. In the Senate debates of September 7, 1978, Senator Bartlett from Oklahoma proposed an amendment to S.2266 allowing for voluntary reaffirmations with a 30-day cooling off period. He termed the proposed prohibition on reaffirmations as "paternalistic" and pointed out some of the inherent problems in a complete bar, particularly when combined with the Senate version of Section 722 redemptions. *See* Senate Debates, 124 Cong. Rec.S14718–45, at VII–11 *et seq.* (daily ed. Sept. 7, 1978). Although strong opposition was voiced to this amendment, it was accepted by the Conference Committee in modified form. As Senator Wallop from Wyoming told the Senate in its final debates on the bill:

The Senate has prevailed on the question of reaffirmations, which would have been absolutely prohibited under the House bill. Instead, all reaffirmations will be permitted. The reaffirmation will be approved by the court after inquiry in individual cases and only in consumer debt instances will the court be empowered to find that a reaffirmation agreed to by the creditor and debtor is not in the debtor's best interest. The recission feature in the Senate bill will be preserved.

Senate Debate on Compromise Bill, 124 Cong.Rec.S17403–34, at X–13 (daily ed. Oct. 6, 1978).

The legislative history of Sections 722 and 524(c) of the Bankruptcy Code shows that redemption under Section 722 consists of a "first right of refusal" for the debtor, giving him an absolute right to pay the fair market value of certain specified property and retain it regardless of the presence or absence of creditor assent. On the other hand, reaffirmation and any "agreement providing for redemption" under Section 524(c) are *voluntary* agreements made between creditor and debtor.

■ The debtor's "first right of refusal" or cash redemption right under Section 722 is imposed upon the creditor. As no ongoing relationship is established between debtor and creditor, no enforceable agreement is required. Where, however, debtor and creditor negotiate a redemption to be made by installment payments, an enforceable agreement is required and the provisions of Section 524(c) are invoked. Specifically, when an "agreement . . . providing for redemption" is made between an individual debtor and a creditor on a consumer debt, subsections 524(c)(4)(B)(i) and (ii) must be complied with. Under these provisions, the agreement is enforceable as long as it is "entered into in good faith." Such agreements are not, however, subject to the "undue hardship" determination required of the Court in approving other reaffirmation agreements of individual consumer debtors.

■ As with all agreements subject to Section 524(c), these negotiated redemptions in installments are voluntary in na-ture, and unlike cash redemptions under Section 722, may not be forced on an unwilling creditor. As stated in *Vinson v. Farmers's Home Administration, supra,* 5 B.R. 32, CCH Bankruptcy Law Reports at 77,948: "[R]eference to 'agreement between' [in Section 524(c)] contemplates a completely voluntary procedure, not one forced upon a party . . . ." As noted in the House and Senate Reports, this characterization of the right of redemption, as bestowed in Sections 722 and 524(c)(4)(B), gives the debtor additional rights under the protection of the bankruptcy court without impairing the creditor's security or subjecting the creditor to long-term risks without its approval.

That redemptions imposed upon a creditor require cash payment is consistent with the usual meaning of the term. Redemptions in the context of foreclosures of security interests on both real and personal property are consistently held to require immediate payment in full of the amount due. The description in the legislative history of the Section 722 right of redemption as a "right of first refusal" in goods otherwise subject to repossession, increases the weight which should be given, by analogy, to the treatment of redemptions in foreclosure contexts.

Specifically, as pointed out by the court in *In re Miller,* 6 B.C.D. 436 (E.D.Mich. 1980), the Uniform Commercial Code's redemption provision, found in U.C.C. § 9–506, has been consistently determined to mean cash payment in full. The official comment to Section 9–506 of the U.C.C. states:

"Tendering fulfillment" obviously means more than a new promise to perform the existing promise; it requires payment in full of all monetary obligations then due and performance in full of all other obligations then matured.

The legislative history of Section 722 makes specific reference to this redemption provision of the U.C.C. Although it states that redemption under Section 722 is broader than under Section 9–506 of the U.C.C., the

breadth of the section seems to go to the "type of property which may be redeemed, when the property may be redeemed, the waivability of the redemption right and the amount of the required payment," rather than to the manner of payment. *In re Miller, supra* at 437, n. 5. Certainly Section 722's most significant change from the U.C.C.'s right of redemption concerns the amount, for U.C.C. § 9–506 requires that "all obligations secured by the collateral" as well as collection expenses must be paid to redeem while Section 722 gives the debtor the right to redeem by payment of the amount of the allowed secured claim, or the market value of the property, which may often be significantly less than the amount due. However, these changes evidence no intent to alter the plain meaning of redemption under the U.C.C. in requiring a cash payment in full. Rather, except as earlier noted, the reference to the U.C.C.'s redemption provision in the legislative history seems to evidence that it served as a model for the drafters of the new bankruptcy law.

In a very practical sense, Congress's intent to protect the rights of the creditor, as previously noted, also supports the Court's conclusion that redemption under Section 722 cannot be accomplished by installment payments without creditor approval. Emphasizing the creditor's point of view, the court in *In re Stewart*, 3 B.R. 24, 25 (N.D. Ohio 1980) pointed out:

> The creditor wants cash not more promises, and, in the event of default, the creditor might be required to seek relief in another forum and be subject to further dilution of his position.

Although it is true that the creditor does not always receive the relief it desires in bankruptcy, allowing redemption in installments would create some very substantial practical problems in insuring that the creditor would be adequately protected and assured of receiving the present fair market value of the collateral. Although payments could be designed to keep up with the depreciation of the redeemed property, and rights could be given to the creditor to repossess the property immediately upon

default on these payments without further court action, this would leave to the court the task of, first of all, determining in each case what constituted adequate protection, and, in the second place, monitoring and enforcing its orders. Although rights akin to redemption in installments are allowed in Chapters 11 and 13, these rights are carefully controlled by statute and are monitored by the trustee in chapter 13 and by the trustee or debtor in possession in Chapter 11. *See* 11 U.S.C. §§ 1129(b)(2)(A)(i)(II) and 1325(a)(5)(B)(ii). Chapter 7 bankruptcies are just not equipped with the procedure to enforce redemptions in installments. The debtor properly is not given the complete scope of rights in Chapter 7 that are available to the Chapter 13 or Chapter 11 debtor or to the trustee.

Debtors may claim that without the right to impose redemptions upon creditors by payments in installments, the right to redeem means little to them. The absence of this right in Chapter 7, however, may provide debtors with a persuasive reason to consider the alternative of filing under Chapter 13. The availability of Chapter 13 was extended by the new Code partially because it allows debtors to preserve their property from liquidation by payments out of future income. If a debtor cannot redeem according to his rights under Chapter 7, he may consider the options given him in Chapter 13. If Chapter 13 relief is not available, the debtor may still fall back on the possibility of negotiating an enforceable reaffirmation.

Debtors were given greatly expanded rights by the inclusion of the right to redeem in Section 722. Nevertheless, the Court recognizes that without an absolute right to redeem in installments, many debtors, such as the Reids and the Nelsons here, may effectively be precluded from exercising their right to redeem. Debtors often cannot scrape together the necessary money, and refinancing is difficult to acquire at a reasonable interest rate considering the debtor's past credit record. As a practical matter, creditor assent to redemptions in installments may be rare since Section

524(c) allows the creditor to negotiate for reaffirmation of the entire debt. Even debtors willing to reaffirm may face a creditor who refuses to deal further with the debtor at any price. The fact, however, that the new law does not give debtors an absolute right to salvage their property in bankruptcy does not erase the further fact that substantial gains for debtor's rights have been made in the new Code. Among those gains are the right to redeem by a lump sum payment and the right to Court protection from coercive reaffirmations under Section 524(c).

Finally, as a practical aid to enable debtors to exercise their rights of redemption, the Court may allow the debtor up to 30 days from the date that the amount of the allowed secured claim against the property to be redeemed is set, to make full payment. This period will usually be short enough to avoid the practical problems of providing the creditor with adequate protection, yet long enough to allow the debtor to obtain refinancing or the necessary funds after a fair market value has been set.

## PROTECTION OF THE AUTOMATIC STAY FOR DEBTOR'S PROPERTY: THE INTERRELATIONSHIP BETWEEN SECTION 362(a)(5) AND SECTION 554

The question next is what protection is available for the debtor's property pending the debtor's decision to redeem. In many instances, property which the debtor would wish to redeem is abandoned by the trustee at or soon after the meeting of creditors. If the creditor then moves immediately to repossess, the debtor has little chance to gather funds in order to exercise the right to redeem. Most have assumed that, as under former law, the burden is on the debtor to request some injunctive relief if protection is needed for his property between the time of abandonment and the redemption hearing. Under this assumption, abandonment of the property releases it from the grasp of the automatic stay. Indeed, the *Information and Management Bulletin*, Vol. 29 (July 1980) of the Administrative Office of the United States Courts reflected this general opinion when it stated, in an apparent attempt at clarification: "In fact, if the property in question is exempt or abandoned, it is no longer property of the estate and therefore not subject to the provisions of Section 362." A close look at Section 362, however, reveals that some major changes have been effected from the old law which do in fact provide the debtor with a separate basis for protection of his property under the automatic stay.

11 U.S.C. § 362 represents a much more complete statement of the effect of the automatic stay than did former law. It also expands the coverage of the automatic stay. Besides providing protection for property of the estate, Section 362 specifically stays in subsection (a)(5):

> any act to create, perfect, or enforce *against property of the debtor* any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title . . . . (Emphasis added.)

In comparing the wording of this subsection with that of others, it appears that property of the debtor is clearly differentiated in treatment from property of the estate. Indeed, subsection 362(a)(5) acts, on its face, to provide the debtor's property with separate protection. This conclusion is clearly supported in the House Report:

> Paragraph (5) stays any act to create or enforce a lien against property of the debtor, that is, most property that is acquired after the date of filing of the petition, property that is exempted, or property that does not pass to the estate, to the extent that the lien secures a prepetition claim.

H.R.Rep.No.95–595, *supra* at 341, U.S.Code Cong. & Admin.News 1978, p. 6298.

This distinction is carried through in Section 362(c) regarding termination of the stay. Section 362(c)(1) states that the stay protecting property of the estate terminates when that property is no longer property of the estate, as when, for instance, it has been abandoned. Section 362(c)(2), however, provides for separate termination of

the stay of other acts specified in Section 362(a) at the earliest of the discharge, dismissal, or closure of the case. Thus, termination of the protection given in Section 362(a)(5) to property of the debtor would appear to await the events recited in Section 362(c)(2) rather than the abandonment contemplated in (c)(1). The House Report, in explaining the content of proposed Section 362(c), solidifies the Court's conclusion that Section 362 provides the debtor's property with separate protection and further clarifies the intended application of Section 362(c) to this stay on action against property of the debtor:

> Subsection (c) of Section 362 specifies the duration of the automatic stay. Paragraph (1) terminates a stay of an act against property of the estate when the property ceases to be property of the estate, such as by sale, abandonment, or exemption. *It does not terminate the stay against property of the debtor if the property leaves the estate and goes to the debtor.* Paragraph (2) terminates the stay of any other act on the earliest of the time the case is closed, the time the case is dismissed, or the time a discharge is granted or denied (unless the debtor is a corporation or a partnership in a chapter 7 case). (Emphasis added.)

H.R.Rep.No.95–595, *supra* at 343, U.S.Code Cong. & Admin.News 1978, p. 6299.

Thus, if property leaves the estate and goes back to the debtor, this property is specifically protected by Section 362(a)(5) from creditor action. Likewise, as noted in the House Report to Section 362(a)(5), this protection extends to after-acquired property of the debtor and property which never becomes property of the estate under Section 541. The application of the automatic stay to the debtor's after-acquired property and to property which is carefully designated in the subsections of Section 541 as not passing to the estate in the first place is fairly simple. Section 362's application to property which leaves the estate and returns to the debtor is somewhat more complicated.

■ It is initially obvious that property revesting in the debtor, and thereby protected under Section 362(a)(5) includes, at least, exempt property. This property is specifically designated as being protected by the stay in the House Report accompaning Section 362(a)(5). Unlike under the former Act, property claimed as exempt initially becomes property of the estate, but revests in the debtor upon the failure of any party to object to such claimed exemptions within a specified period of time. As stated in 3 Collier on Bankruptcy ¶ 522.26, at 522–64 (15th ed. 1980):

> Under section 541, all property of the debtor becomes property of the estate. Technically, the debtor, rather than initially withholding property that he claims as exempt, will actually be seeking a return from the estate of the property in question.

The House Report to Section 362(a)(5) fails to indicate, however, whether non-exempt property revests in the debtor upon release from the estate so as to be subject to the automatic stay of Section 362(a)(5). The plain language of the statute is broad enough to encompass any property, exempt or non-exempt, which returns to the debtor upon release from the estate. Likewise, the House Report to Section 362(c), in discussing the termination of the stay against property of the estate when it returns to the debtor appears to refer to more than just exempt property: It refers to property which ceases to be property of the estate "such as by sale, abandonment, or exemption," then goes on to state that if such property leaves the estate and goes to the debtor, the stay is not terminated under Section 362(c)(1). H.R.Rep.No.95–595, *supra* at 343, *supra* at 590. Exempt property, as explained, obviously returns to the debtor. Property which is sold likewise is easily catagorized, for it returns to the debtor only if sold to the debtor. The fate of abandoned property, and the application of Section 362(a)(5) to such property, is not so easily ascertained.

The state of the law under the former Act appears to be that title to all property

abandoned by the trustee stood as if no bankruptcy had been filed, which in most cases meant it revested in the debtor. Justice Cardozo aptly expressed this rule in *Brown v. O'Keefe*, 300 U.S. 598, 602, 57 S.Ct. 543, 546, 81 L.Ed. 827 (1937):

> Whatever title or inchoate interest may have passed to the trustee was extinguished by relation as of the filing of the petition when the trustee informed the court that the shares were burdensome assets, and was directed by the court to abandon and disclaim them. In such case "the title stands as if no assignment had been made." A precise analogy is found in the law of gifts and legacies. Acceptance is presumed, but rejection leaves the title by relation as if the gift had not been made. (Citations omitted.)

In *Wallace v. Lawrence Warehouse Company*, 338 F.2d 392, 394 n. 1 (9th Cir. 1964), the Ninth Circuit emphasized the widespread acceptance of this general position:

> The ordinary rule is that, when a trustee abandons property of the bankrupt, title reverts to the bankrupt, nunc pro tunc, so that he is treated as having owned it continuously. (Citations omitted.)

*See also Sessions v. Romadka*, 145 U.S. 29, 12 S.Ct. 799, 36 L.Ed. 609 (1892); *Sparhawk v. Yerkes*, 142 U.S. 1, 12 S.Ct. 104, 35 L.Ed. 915 (1891); *In re Garfinkle*, 577 F.2d 901 (5th Cir. 1978); *In re Ira Haupt & Co.*, 398 F.2d 607 (2d Cir. 1968); *Brookhaven Bank & Trust Co. v. Gwin*, 253 F.2d 17 (5th Cir. 1958); *Colson v. Monteil*, 226 F.2d 614 (8th Cir. 1955); *Rosenblum v. Dingfelder et al.*, 111 F.2d 406 (2d Cir. 1940); *In re Moss et al.*, 21 F.Supp. 1019 (E.D.Ill.1938).

This analysis appears to be equally appropriate to the present law. Section 554 deals with the abandonment of property. Both the House and Senate reports, in explanation of the effect of the section state:

> Abandonment may be to any party with a possessory interest in the property abandoned. In order to aid administration of the case, subsection (b) deems the court to have authorized abandonment of any property that is scheduled under Section 521(1) and that is not administered before the case is closed. That property is deemed abandoned to the debtor.

H.R.Rep.No.95–595, *supra* at 377; S.Rep. No.95–989, *supra* at 92, U.S.Code Cong. & Admin.News 1978, pp. 5878, 6333. Subsection (b), enacted as Section 554(c), was changed in the final draft by deleting references originally made which stated that abandonment under this section would be made specifically to the debtor. Thus, it appears that abandonment under any subsection of 554 will be to a party with a "possessory interest." Generally, a "possessory interest" is defined as a "right to exert control over" or a "right to possess" property "to the exclusion of others." BLACK'S LAW DICTIONARY 1049 (5th ed. 1979). This legislative reference and attendant definition are in keeping with cases under former law which hold that title and right to the property reverts to its pre-bankruptcy status. Thus, whoever had the possessory right to the property at the filing of bankruptcy again reacquires that right. Normally this party is the debtor, but it is conceivable that a creditor may be entitled to possession instead if, by the exercise of its contractual or other rights, it held a possessory interest prior to the filing of bankruptcy.

The Court's conclusion is buttressed by the language of Section 722. It specifically gives the debtor the right to redeem abandoned property as well as exempted property, implicitly assuming that abandonment revests the debtor with his prior rights over the property. Likewise, allowable reaffirmations under Section 524(c) can deal with property co-extensive in definition with this Court's interpretation of "property of the debtor." While redemption is available only to individual debtors under Section 722, enforceable reaffirmations can be negotiated by any debtors, including corporate and partnership debtors.

■ Thus, when the trustee abandons property, the property stands as if no bankruptcy had been filed and the debtor enjoys the same claim to it and interest in it as he held previous to the filing of bankruptcy. Abandoned property, therefore, normally

revests in the debtor such as to become "property of the debtor" and subject to the protection of Section 362(a)(5). Although case law characterization of the revesting of property in the debtor after abandonment has been referred to as a "legal fiction" to be applied as justice dictates,[2] application in this context is appropriate in light of both the legislative history and the plain meaning of the applicable statutory provisions.[3] Accordingly, Section 362(a)(5) grants the debtor time to enforce rights in his property given him under Sections 722 and 524(c).

█ The effect of Section 362(a)(5) is to provide the debtor with separate protection of his property. This enables him to exercise his right to redeem either by acquiring refinancing or by otherwise gathering the necessary funds, or to negotiate a reaffirmation. Unless earlier relief is requested by the creditor, the creditor may not repossess property, despite any abandonment by the trustee, until one of the three acts specified in Section 362(c)(2) occurs, the first of which, in this jurisdiction, is likely to be the discharge hearing. The application of Section 362 to exempt property and abandoned property is co-extensive with the redemption right given in Section 722, for this right extends to exempt property as well as to non-exempt property which may be abandoned by the trustee. Likewise, the stay will cover property which may be the subject of reaffirmation agreements.

As a result of the protection of Section 362(a)(5), the debtor's rights are not adversely affected by the abandonment decision of the trustee. Property which may be of inconsequential value to the estate and therefore abandoned by the trustee, may, nevertheless, be valuable to the debtor. The stay persists to allow the debtor opportunity to salvage that property. If further time is needed by the debtor to exercise his rights, continuation of the stay may be requested for cause under Section 362 or an injunction against creditor action may be requested under Section 105(a).

█ This result may appear to impose a heavy burden and considerable consternation on the creditor, for despite the abandonment of its collateral, the creditor may not repossess the property until relief from the stay is granted as a result of litigation, discharge, dismissal, or case closure. This is mitigated in a no asset case of an individual in this district since termination of the stay under Section 362(c)(2) will usually occur by the granting of a discharge within 90 days from the filing of the petition. In the cases of Chapter 7 partnership or corporate debtors, however, the debtors will receive no discharge. Therefore, not until the case is closed or dismissed will the stay terminate without creditor action. Mitigation of the burden in these circumstances may be possible by allowing the creditor to seek relief from the stay by a summary and inexpensive procedure less onerous than full litigation.[4]

## ORDER

In accordance with this memorandum opinion, the debtors' request to redeem in installments is denied. Debtors will be given 10 days from the date of this order in which to pay the set amount and exercise their rights to redeem.

2. *See In re Ira Haupt & Co., supra* at 613 (Characterization is a "legal fiction" which "should not prevent [the court] from reaching the fairest solution."); *Wallace v. Lawrence Warehouse Company, supra* at 394 n.1 ("This is a fiction . . . not a categorical imperative, to be blindly followed to a result that is unjust."); *Rosenblum v. Dingfelder et al, supra* at 409 ("Relation back may be considered in the nature of a fiction," but as "it fits this case appropriately," it will be applied).

3. In actuality, the "legal fiction" referred to in the characterization deals more with the "rela-

tion back" of the title of abandoned property. For purposes of this situation, however, whether title revests in the debtor or other party as though the trustee had never intervened, or whether title returns to the debtor free from the interest of the trustee with no such relation back, makes no difference. The property under either characterization becomes property of the debtor to be further subject to the automatic stay.

4. *See South v. United States,* 6 B.R. 645 (W.D. Okl.1980).