OPINION
{¶ 1} Defendant-Appellant, William Nevers, appeals a decision of the Bellefontaine Municipal Court of Logan County, where he pled no contest to and was found guilty of one count of failure to abide by an order to raze or repair a structure, in violation of Bellefontaine City Ordinance ("B.C.O.") 1315.04, and one count of failure to comply with a condemnation order, in violation of B.C.O. 1315.08. Because Nevers failed to effectively divest himself of title following the abandonment of the property from the bankruptcy estate, he remains liable therefor. However, since he was not an occupant of the premises, he could not fall within the purviews of B.C.O. 1315.08. Accordingly, we reverse the trial court's judgment insofar as it relates to the conviction for violation of B.C.O. 1315.08.
 {¶ 2} Facts and procedural history relevant to issues raised on appeal are as follows: Nevers owns two parcels of real estate located at 305 and 313 West Sandusky Avenue in Bellefontaine, Ohio. Both properties were the subject of a foreclosure action filed on April 24, 2000, by Bank One, National Association, as trustee of Bank One Financial Services, Inc., c/o Homecomings Financial Network ("Homecomings Financial"), the creditor holding the mortgage and promissory notes on both properties.
 {¶ 3} On July 20, 2000, Nevers, through counsel, prepared and filed a Chapter 7 bankruptcy petition in the U.S. Bankruptcy Court, Southern District of Ohio, Eastern Division. That same day, the residence at 305 West Sandusky Avenue burned. He subsequently amended his bankruptcy schedules to reflect the loss of the value of the real estate. In his statement of intentions filed before the bankruptcy court, Nevers indicated that he intended to surrender his interest in the real estate. However, he failed to transfer a deed in lieu of foreclosure to his creditors and retained title to the real estate in his own name by deed at the Logan County Recorder's Office.
 {¶ 4} Homecomings Financial was granted relief from the automatic stay as to both properties. In November 2000, the bankruptcy court granted Nevers a discharge and issued an order directing that the trustee's final account be approved, reflecting that all of Nevers' assets were exempt, overburdened by liens or of inconsequential value. Thereafter, Homecomings Financial filed a notice of dismissal of the foreclosure action on March 5, 2001.
 {¶ 5} On April 1, 2001, Nevers received a letter from the Bellefontaine Service Safety Director, ordering him to raze the building that burned at 305 West Sandusky Avenue. In response, Nevers notified the director that he had filed bankruptcy, been granted a discharge, had surrendered his interest in the property, and had no right or responsibility to maintain the same. Nevers was subsequently charged with one count of failure to abide by an order to raze or repair a structure, in violation of B.C.O. 1315.04, and one count of failure to comply with a condemnation order, in violation of B.C.O. 1315.08.
 {¶ 6} On February 11, 2002, Nevers entered a plea of no contest and was found guilty as to both counts. He was fined $250 for failing to comply with the order and sentenced to three days in jail. The fine and jail term were suspended provided that he comply with the order within thirty days of the court's entry. The instant appeal followed, with Nevers presenting two assignments of error for our consideration.
 First Assignment of Error. {¶ 7} "The Trial Court erred as a matter of law when it found the Appellant guilty of Bellefontaine City Ordinance 1315.08; Failure to comply with a condemnation order."
 {¶ 8} B.C.O. 1315.08 provides that when a condemnation order is served on an occupant other than the owner of such premises, a reasonable time of not less than thirty days shall be stated to vacate the property after non-compliance. Thereafter, owners or occupants must vacate the premises at the time set for correction of defects.
 {¶ 9} Nevers argues that since the building had been destroyed, was uninhabitable, and had been vacant for nearly nine months, he was not an occupant of the premises and could not fall within the purviews of the ordinance. The State concedes that the trial court erred in finding him guilty thereunder, and we agree. Accordingly, Nevers' first assignment of error is sustained.
 Second Assignment of Error. {¶ 10} "Whether a debtor/property owner, who has surrendered his interest in real estate and been granted a discharge under Chapter 7 of Title 11 of the U.S. Code, can be held financially and criminally responsible for failing to raze said real estate pursuant to Bellefontaine City Ordinance 1315.04."
 {¶ 11} In his second assignment of error, Nevers claims that the notice of intent to surrender his interest in the real estate contained in his statement of intentions was sufficient to divest himself of any interest in the subject real estate, and the fact that the trustee concluded the bankruptcy proceedings designating the estate as a no asset case supports that he has no interest in the property. He further asserts that when a mortgage holder fails to foreclose or otherwise release its rights under a mortgage subsequent to a debtor filing a Chapter 7 bankruptcy, the mortgage holder bears the continued responsibility for the property by virtue of its in rem claim. Alternatively, Nevers attempts to characterize the city's right to enforce the ordinance as a claim subject to discharge in bankruptcy and argues that he cannot be held financially or criminally responsible for failing to raze the property because he was granted a discharge under Chapter 7 of Title 11 of the U.S. Code. We proceed to address these arguments in turn.
 {¶ 12} Effect of Bankruptcy Upon Title to Property
 {¶ 13} Contrary to Nevers' assertions, bankruptcy does not provide a dumping ground for unwanted property. The fact that the property was not administered by or was abandoned from the estate, or that the estate was determined to be a no asset case does not divest him of any interest in such property. 11 U.S.C.A. § 554 provides that bankruptcy estate property is abandoned from the estate under the following circumstances:
 {¶ 14} "(a) After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.
 {¶ 15} "(b) On request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.
 {¶ 16} "(c) Unless the court orders otherwise, any property scheduled under section 521(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title.
 {¶ 17} "(d) Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate."
 {¶ 18} "The effect of abandonment by a trustee, whether accomplished by affirmative act under 11 U.S.C. § 554(a) or (b) or by failure of administration under subparagraph (c), is to divest the trustee of control over the property because once abandoned, property is no longer part of the bankruptcy estate. * * * When property is abandoned, it ceases to be property of the estate and reverts to the debtor."[1] "Whether property be abandoned under § 554(a) [or (b)] or (c), it is removed from the estate, thereby divesting the trustee of control, and divesting the bankruptcy court of jurisdiction over matters concerning abandoned property."[2]
 {¶ 19} The legislative history of § 544 states "abandonment may be to any party with a possessory interest in the property abandoned."[3] In Brown v. O'Keefe, the Unites States Supreme Court held that once a trustee abandons property of the estate, the property is treated as though no bankruptcy had been filed, and interest in the property reverts back to the party that held such interest prepetition.[4]
Relying upon this principle, courts have interpreted the legislative history of § 544 to mean that abandonment should be to the party with the superior possessory interest.[5] Normally this party is the debtor,[6] but a creditor may be entitled to possession instead if, under applicable law or by exercise of contractual or other rights, it held a superior possessory interest at the time the bankruptcy petition was filed.[7]
 {¶ 20} In Hausman v. Dayton, the Ohio Supreme Court held that "after a mortgagor defaults, legal title passes to the mortgagee only as between the mortgagor and the mortgagee. As to the rest of the world, title remains in the mortgagor until the mortgagee forecloses on the mortgage and the sale is consummated, the mortgagee recovers possession of the property by ejectment proceedings, or the mortgagee otherwise extinguishes the right of the mortgagor to redeem."[8] "In Ohio, a mortgagor's right to redeem is `absolute and may be validly exercised at any time prior to confirmation of sale.'"[9] Accordingly, the Court found that the foreclosing mortgagee was not a "titleholder" of mortgaged property, such as would render it liable for abatement under a municipal nuisance ordinance; the mortgagee had foreclosed, but sale was never consummated, the mortgagee had not obtained possession by ejectment, and the mortgagor's statutory right of redemption had not been extinguished.[10]
 {¶ 21} The record herein reveals that although Homecomings Financial had initiated foreclosure proceedings prior to Nevers' filing his bankruptcy petition, it had not obtained possession by ejectment, the sale was never consummated, and Nevers' statutory right of redemption had not been extinguished. Therefore, based upon the foregoing authority and rationale, Nevers retained a superior possessory interest in the properties at the time the bankruptcy petition was filed. Moreover, although Nevers claims to have surrendered the property to Homecomings Financial, a mere statement of an intent to surrender property submitted in bankruptcy proceedings is not sufficient to divest himself of his interest. To do so, Nevers had to take affirmative steps to convey the property to Homecomings Financial or some other party, e.g., execute a deed in lieu of foreclosure. As the authority herein illustrates, a mortgagee does not bear responsibility for a property by the mere existence of its in rem claim to the property, by virtue of the initiation of foreclosure proceedings, or by failing to foreclose or otherwise release its rights under a mortgage subsequent to a debtor filing a Chapter 7 bankruptcy. Accordingly, we conclude that following the trustee's abandonment of the property from the estate, Nevers reacquired the property by virtue of his superior possessory interest and failed to effectively divest himself of title thereto.
 {¶ 22} City's Right to Enforce Local Ordinances/Effect ofDischarge in Bankruptcy
 {¶ 23} As mentioned previously, Nevers argues that the City of Bellefontaine's right to enforce its local ordinance and impose fines for the failure to abide thereby is a debt discharged under11 U.S.C.A. §§ 524 and 727(b). We do not agree.
 {¶ 24} First, "[t]he Bankruptcy Code recognizes the distinction between liability and debts with respect to the discharge provided to debtors under those sections."[11] While a discharge in bankruptcy voids any judgment to the extent that it is a determination of the personal liability of the debtor with respect to a pre-petition debt, a discharge does not release the debtor from continued liability for property retained thereafter or insulate him from the enforcement of local ordinances with respect thereto.[12] Therefore, Nevers remains personally liable for the property until he has divested himself of title.[13]
 {¶ 25} Additionally, even assuming this was a debt subject to the bankruptcy proceedings, 11 U.S.C. § 523(a)(7) provides that a discharge under Chapter 7 does not discharge an individual debtor from any debt "to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss." The discharge ability of debts under § 523(a)(7) may be determined at any time, in any forum in which the debtor is provided procedural due process as prescribed in F.R.B.P. 7001, et seq.[14] In order to "determine whether [a debt] is dischargeable under § 523(a)(7), we must determine whether [such] debt meets the three requirements of the section."[15] In the instant case, it cannot be disputed that this is a fine payable to and for the benefit of a governmental unit and is not compensation for any pecuniary loss by such governmental entities or any other party. Accordingly, Nevers' second assignment of error is overruled.
 {¶ 26} Having found error prejudicial to the appellant herein, in the particulars assigned and argued, the judgment of the Bellefontaine Municipal Court of Logan County is reversed insofar as it found the appellant guilty of failing to comply with a condemnation order in violation of Bellefontaine City Ordinance 1315.08 and is affirmed in all other respects.
Judgment affirmed in part and reversed in part.
 BRYANT and SHAW, JJ., concur.
[1] In re Sills (S.D.Ohio 1991), 126 B.R. 974, 976, citing Brown v.O'Keefe (1937), 300 U.S. 598, 602, 57 S.Ct. 543, 546, 81 L.Ed. 827. See, also, In re Dewsnup (C.A.10, 1990), 908 F.2d 588, 590, affirmed sub. nom Dewsnup v. Timm (1992), 502 U.S. 410, 112 S.Ct. 773,116 L.Ed.2d 903.
[2] In re Keller (Bankr.S.D.Ohio 1998), 229 B.R. 900, 902.
[3] H.R. Rep. No. 595, 95th Cong., 1st Sess. 377 (1977); S.Rep. No. 989, 95th Cong.2d Sess. 92 (1978) U.S. Code Cong. Admin. News 1978, pp. 5787, 5878, 6333.
[4] Brown, 300 U.S. at 602, 57 S.Ct at 546, 81 L.Ed. 827; see, also, Matter of Popp (Bankr.D.Neb. 1993), 166 B.R. 697, 700.
[5] In re Bell (6th Cir. 1983), 700 F.2d 1053, 1057-1058; In re Perry
(Bankr.D.Md. 1983), 29 B.R. 787, 793; In re Cruseturner (Bankr.D.Utah 1981), 8 B.R. 581, 591.
[6] See Farm Credit Serv. of Mid-America, ACA v. Dues (1995),104 Ohio App.3d 760, 765.
[7] Cruseturner, 8 B.R. at 591; In re Bell, 700 F.2d at 1057-1058; Inre A.J. Lane Co., Inc. (Bankr.D.Mass. 1991), 133 B.R. 264,268-269.
[8] Hausman v. Dayton (1995), 73 Ohio St.3d 671, 676.
[9] Id., quoting Women's Fed. Sav. Bank v. Pappadakes (1988),38 Ohio St.3d 143, 146.
[10] Id.
[11] In re Horton (Bankr.D.Colo. 1987), 87 B.R. 650, 652; In reLenz (Bankr.D.Colo. 1988), 90 B.R. 458, 460.
[12] Id.
[13] Id.
[14] In re Taibbi (Bankr.E.D.N.Y. 1997), 213 B.R. 261, 273, citing AdamGlass Service, Inc. v. Federated Department Stores, Inc. (Bankr.E.D.N.Y. 1994), 173 B.R. 840, 843. See, also, In re Ganous (Bankr.S.D.Fla. 1992), 138 B.R. 110.
[15] In re Rashid (3rd Cir. 2000), 210 F.3d 201, 206.