### In re TELTRONICS SERVICES, INC., Bankrupt.

### Jules J. HESSEN, as trustee in bankruptcy of Teltronics Services Inc., Plaintiff,

### v.

### Edward M. BEAGAN, Carl E. Person and Walter Reid, Defendants.

### Jules J. Hessen, individually, and Hahn & Hessen, Additional Defendants on Counterclaims.

### Bankruptcy No. 79 B 2725.

United States Bankruptcy Court, E.D. New York.

April 23, 1984.

Walter C. Reid and Carl E. Person, New York City, Attorneys, pro se.

Paul S. McDonough, Long Island City, N.Y., for Telecom Plus Intern., Inc.

Sullivan & Cromwell, New York City, for Ericsson.

Hahn & Hessen, New York City, for trustee.

## OPINION

CECELIA H. GOETZ, Bankruptcy Judge:

Jules J. Hessen, the trustee in bankruptcy of Teltronics Services, Inc. ("Teltronics") has filed a complaint against Edward M. Beagan, the President of Teltronics, and Beagan's attorneys, Carl E. Person and Walter Reid, to enjoin these defendants permanently from initiating, or prosecuting, any legal proceeding in the name of Teltronics. By Order to Show Cause the trustee has requested a preliminary injunction enjoining the defendants during the pendency of this adversary proceeding from such activities. The defendants have filed an answer and counterclaims to the trustee's complaint; they have also moved to have this judge disqualify herself from these proceedings.

The relevant facts are few: Teltronics was adjudicated a bankrupt on April 30, 1980 in a proceeding which began on September 28, 1979.[1] Jules J. Hessen qualified as trustee on May 20, 1980. The estate of Teltronics is still in the course of administration under the supervision of this Court and has not been closed. Neither the trustee nor anyone else has asked this Court to authorize the trustee to abandon any claims, or causes of actions, belonging to Teltronics and no order has been entered by the Court authorizing such abandonment.

Nevertheless, Edward Beagan, represented by the other defendants, has filed two actions in the name of Teltronics in the United States District Court for the East-

---

1. Because this proceeding began prior to the effective date of the Bankruptcy Code, October 1, 1979, enacted as part of the Bankruptcy Reform Act of 1978, it is to be conducted and determined under the Bankruptcy Act as if the Code had not been enacted. Section 403(a) of Title IV of the Bankruptcy Reform Act of 1978, Public Law 95–598.

ern District of New York. The complaints read:

The action is brought by, and on behalf of, Teltronics, but not as 'Teltronics, the bankrupt estate', which is represented by Teltronics' trustee in bankruptcy, Jules J. Hessen (the 'Trustee').

They allege furthermore that:

"The Trustee has refused to commence this action against the defendants on behalf or in the name of 'Teltronics, the bankrupt estate', even though the Trustee is aware of Teltronics' claims herein".

According to the "Answer with Counterclaims" filed in response to the trustee's complaint in this Court, it is the theory of the defendants that the trustee abandoned the causes of action which they are now asserting leaving them free to assert them:

"However, by reason of the trustee's refusal to pursue the claims after notice and demand by defendants, the trustee abandoned such claims and the claims reverted to Teltronics, other than the bankrupt estate, and at the moment of such reversion were no longer assets of the estate and were no longer subject to the jurisdiction or control of the trustee or the Bankruptcy Court." Par. 9 of Answer with Counterclaims, dated December 19, 1983.

## BANKRUPTCY RULE 608

The defendants evidently believe that abandonment is an issue of fact to be proved by reference to the acts of the trustee. This ceased to be a permissible view of the law in 1973 when Bankruptcy Rule 608 became effective.

Unlike the Bankruptcy Code, the Bankruptcy Act was silent on the subject of abandonment.[2] The result was uncertainty in the law as to how abandonment was to be manifested, specifically whether there was the need for a formal act by the Court before an asset could be considered to have been abandoned by the trustee.

This uncertainty was reflected in one of the leading texts on bankruptcy, published in 1956:

"There is no prescribed method for abandoning property deemed worthless by the trustee. It is the better practice to file a formal petition with the referee seeking to leave to abandon, particularly where the trustee has taken possession of the property, but an order of the court is not required and it is enough if the trustee clearly indicates his intention to abandon. His intention may be sufficiently indicated by a clear statement there at a creditors' meeting, his express disclaimer of any interest, or by quitclaiming the property." 2 Remington Bankruptcy, Section 1144 at p. 624 (1956) (footnotes omitted).

The law, however, was changed with the adoption in 1973 of Bankruptcy Rule 608 which clarified the previous "uncertainty by mandating court approval". *Matter of Trim-X, Inc.*, 695 F.2d 296, 300 (7th Cir. 1982).

Bankruptcy Rule 608 reads:

"The court may, on application or on its own initiative and after hearing on such notice as it may direct, approve the abandonment of any property and, without reopening the case, may direct the abandonment of any property of inconsequential value discovered after a case is closed. If a case is closed without administration of property of the estate that has been scheduled, the property shall be deemed to be abandoned with the approval of the court, and on request the court may, without reopening the case, enter an order approving the abandonment."

*Collier on Bankruptcy* explains the changes made in the law by Bankruptcy Rule 608 as follows:

"Because the former statute [the Act] was silent about a general right to abandon, it made no provision as to what constituted abandonment and what the

---

**2.** In the Code, abandonment is the subject of Section 554. That section authorizes abandonment by a trustee, without order of the Court while a case is still open, but only after "notice and a hearing".

trustee was required to do to disclaim property. Many courts held that a formal act was not absolutely essential and that any clear manifestation of the trustee's intent to disclaim would suffice. But whether a manifestation of intent was clear enough frequently raised difficult questions of fact, particularly where the manifestation consisted of inaction rather than action.

Bankruptcy Rule 608 codified in 1973, the better practice as it developed under case law. The rule required court approval as a condition prerequisite to abandonment of property of the estate by the trustee. The rule offered the appreciable advantage of eliminating controversies over the implications of the trustee's inaction or otherwise ambiguous manifestations of his intent". 4 *Collier on Bankruptcy*, ¶ 554.01 at pp. 554-3–554-4 (15th Ed.1983). (fns. omitted).[3]

The Advisory Committee's Note to Rule 608 observes that the "rule is new but codifies the preferred practice developed under case law". Cited by *Collier* as illustrative of the better practice, codified by Rule 608, is *Matter of Humeston*, 83 F.2d 187, 188 (2d Cir.1936) in which Judge Learned Hand, writing for the Court, stated flatly that there could be no abandonment by a trustee, even with the consent of the creditors, without an order of the bankruptcy court "for the Court has the final word". 4A *Collier on Bankruptcy*, ¶ 70.-42 at 507, n. 9 (14th Ed.1978).

The codification in Bankruptcy Rule 608 of views, like that expressed by Judge Learned Hand, drained of any authority the cases which treated abandonment as a question of fact to be resolved by examination of the conduct of the bankruptcy trustee. Precedents like *In re Yalden*, 109 F.Supp. 603 (D.Mass.1953); *Matter of Malcom*, 48 F.Supp. 675 (E.D.Ill.1943), and *Schram v. Tobias*, 40 F.Supp. 470 (E.D. Mich.1941), all decided prior to the adoption of Bankruptcy Rule 608, and which, because of their inconsistency with *Humeston, supra,* probably never represented the law in this Circuit, no longer have any vitality.

■ Since 1973 it has been the law that as long as a bankruptcy proceeding is still open there can be no abandonment by the trustee of any property of the estate, including causes of action, without formal order of the bankruptcy court authorizing such abandonment.

Since no such order has been entered in the Teltronics' proceeding, as a matter of law there has been no abandonment of any cause of action belonging to Teltronics.

## THE TRUSTEE'S ORAL APPLICATION FOR INJUNCTIVE RELIEF

Among the causes of action belonging to Teltronics are claims against LM Ericsson Telecommunications, Inc. (later named Anaconda-Ericsson, Inc., now named Ericsson, Inc., and hereinafter referred to as "Ericsson"). During the course of a hearing held in the Bankruptcy Court on August 10, 1983, on notice to all creditors of Teltronics of the trustee's proposed settlement of his claims against Ericsson, Mr. William Fabrizio, of the firm of Hahn and Hessen, the attorney for the trustee, advised me that an action had been brought in the name of Teltronics against Ericsson and another communications company, Telecom Equipment Corp., by someone other than the trustee, without his authority, and Mr. Fa-

---

**3.** In an earlier edition *Collier* describes Rule 608, in part, as follows:

Rule 608 provides a·procedure to reduce ambiguities and substitute an objective determination for subjective intent in connection with abandonment of property.... Rule 608 adopts the practice of requiring a certain amount of formality for effective abandonment.... Rule 608 encompasses two distinct methods of abandoning property prior to the closing of the estate. First, property may be abandoned by court order following hearing upon an application or upon the court's own initiative ... The second method of abandonment is, in a sense, by operation of law, if property has been scheduled, and if it remains unadministered, the closing of the estate is deemed the equivalent of an abandonment of that property with the approval of the court." 13 *Collier on Bankruptcy*, ¶ 608.05[1] at p. 6–102 (14th Ed.1977). (fns. omitted).

brizio applied orally for an order enjoining the continuation of these suits in the name of Teltronic.

Although I refused to entertain an oral application for an injunction, I stated flatly that there could be no abandonment of a cause of action by the trustee without order of the bankruptcy court and, therefore, no right in anyone other than the trustee to sue in the name of Teltronics. However, Mr. Person, who was present at the hearing in the capacity of counsel to one of Teltronics' creditors, made clear his disagreement, insisting that abandonment was an issue of fact and that this issue was currently pending before District Judge Edward R. Neaher. He refused to accept my statement of the law that there could be no abandonment without court order, leading to the following colloquy:

> THE COURT: . . . There is absolutely no question that Teltronics Services, Inc. has no right to bring a proceeding before Judge Neaher. . . . The law is absolutely clear in this connection.
>
> MR. PERSON: May I submit the papers that have been submitted to Judge Neaher, which briefs that point? This issue is before Judge Neaher.
>
> THE COURT: I hesitate, since you tell me the matter is before Judge Neaher, and particularly on an oral application for an injunction. I say, the law is so crystal-clear. . . . There is no authority for that corporation to be before Judge Neaher. This is a total violation of the Bankruptcy Law. It is not a matter of briefs. This is a fundamental matter. . . . It seems to me that it may very well be contempt of this Court. There is absolutely no right, in anybody, to bring any action on behalf of Teltronics Services, Inc., other than the trustee. . . . What you are doing, I must advise you, is wholly improper.
>
> MR. PERSON: Your Honor, we have done this, based upon legal research which we see and we presented to the Court, to Judge Neaher, which shows—I would like you to have the opportunity of seeing that.
>
> THE COURT: Mr. Person, there is probably no area of the law which I am more familiar with than the question of who can speak on behalf of the corporation. This estate is not closed; the corporation is here before me; the debtor is here before me; the debtor has asserted these claims against Ericsson; Ericsson is now attempting to settle those claims; for the settlement of those claims, and your efforts to assert those claims—let me finish—your efforts to assert those claims in the name of a corporation, in another Court, is interfering with the exclusive jurisdiction of this Court and is interfering with the administration of this estate and is totally without authorization.
>
> I cannot imagine any act taken in derogation of the Bankruptcy Laws more in derogation of the Bankruptcy Laws. If I had known about it, I perhaps might have, sui sponte [sic] done something about it. Tr. 8/10/83 at 18–30.

When Mr. Person again insisted that Judge Neaher had before him the factual issue as to whether the trustee had abandoned some of his claims, the Court denied that this issue was properly before Judge Neaher, going on to paraphrase, although not citing, Bankruptcy Rule 608:

> THE COURT: No, there can not be an issue [of abandonment] before Judge Neaher, because there is only one way in which you can abandon. Either there has to be an order of abandonment or the estate has to be closed. . . . *Id.* at 32.

Mr. Person, however, persisted:

> MR. PERSON: May I submit the law, in that area, your Honor? I think you—
>
> THE COURT: You have no authority and what you have done is, in my opinion, highly improper.
>
> MR. PERSON: May I submit the authority, however, your Honor, and the evidence?
>
> THE COURT: If Mr. Fabrizio asks for any appropriate action, you may submit whatever authority you have before the Court takes any action. *Id.* at 32–33

\* \* \* \* \* \*

THE COURT added: It is really a remarkable thing, to have this Court's administration undermined in this fashion. *Id.* at 34.

Despite the Court's admonition that only the trustee had the right to sue in the name of Teltronics and that Mr. Person's actions bordered on contempt of court, the defendants have continued their lawsuits in the name of Teltronics leading the trustee to start the present proceeding.

## THE MOTION TO DISQUALIFY

The defendants, in addition to contesting on the merits the trustee's right to relief, are asking that I disqualify myself. Their motion is made pursuant to 28 U.S.C. §§ 455(a) and 455(b)(1). Edward M. Beagan has also filed an affidavit under 28 U.S.C. § 144 claiming that Judge Cecelia H. Goetz "has a personal bias and prejudice" against him and his co-defendants and "has a personal bias and prejudice in favor of the plaintiff and the alleged major creditor, Ericsson". His affidavit is accompanied by a certificate of good faith by Mr. Reid and an affidavit of one Jack Dawson respecting the merits of Teltronics' claims against Ericsson. The same two affidavits support the motion under 28 U.S.C. §§ 455(a) and 455(b)(1).

Mr. Beagan's affidavit sets forth the following grounds for attributing bias and prejudice to me:

1. My belief that he, Mr. Beagan, is "totally devoid of credibility".

2. The fact that because of the view I took of his lack of credibility, I permitted the trial of the adversary proceeding between Teltronics and Ericsson to be heard by another bankruptcy judge. Mr. Beagan insists that "a Judge cannot by law recuse herself for a portion of the proceeding and then elect to come back into the proceeding again".

3. Statements attributed to the attorneys for the trustee respecting my bias and lack of fairness.

4. The colloquy quoted in part above which took place when the trustee moved orally for the same relief he is now seeking by way of formal papers.

5. Various rulings made during the Teltronics' bankruptcy proceeding, which are claimed to reflect bias and prejudice.

The controlling statutes are 28 U.S.C. §§ 144 and 455. 28 U.S.C. § 144 applies by its terms only to district courts, not to bankruptcy judges. However, bankruptcy judges are covered by 28 U.S.C. § 455, which is to be construed *in pari materia* with § 144, so that

"[T]he test is the same under both... The determination should be made on the basis of conduct extrajudicial in nature as distinguished from conduct within a judicial context." *In re International Business Machines Corp.*, 618 F.2d 923, 928 (2d Cir.1980).

The provisions of Section 455 invoked by defendants read:

"(a) Any justice judge or magistrate of the United States shall disqualify himself from any proceeding in which his impartiality might reasonably be questioned."

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, ..."

To charge a judge with being unable to be impartial because of bias and prejudice is to question his or her capacity to discharge the august functions with which he or she has been entrusted. What is being impugned is the judge's integrity. It is an unhappy event to experience. In any long, drawnout proceeding, like this one, it is a charge to which a judge becomes very vulnerable for a number of reasons. Inevitably, as the judge observes the parties over a long period of time opinions are formed as to their veracity and character. It may be necessary or appropriate to make these opinions part of the record. When litigation stretches out over a period of time the judge is likely also to make many rulings. Entering into some of these rulings may well be the observations which the judge has made respecting the parties before

him. And with the passage of time the mind of a judge is no longer a *tabula rasa.*

Does this mean that the judge is no longer qualified, that the insights gained during the course of a proceeding unfit the judge for further services therein?

■ The answer given by the cases is that "personal bias or prejudice", the language of disqualification in § 144 and § 455(b)(1), must be extrajudicial in origin. Not yet definitely settled is whether the test is the same where § 455(a) (with its catch-all language respecting "impartiality might reasonably be questioned") is invoked. But the same policy considerations which led the courts to require an extrajudicial source when bias and prejudice were charged are leading to the same result when the claim is lack of appearance of impartiality. See *In re International Business Machine Corp.*, 618 F.2d 923, 929 (2d Cir.1980); *United States v. Wolfson*, 558 F.2d 59, 64 (2d Cir.1977); *United States v. Coven*, 662 F.2d 162 (2d Cir.1981); *King v. United States*, 576 F.2d 432, 437 (2d Cir.1978).

The classic statement of the law is found in *United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966):

"The alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case."

Accord, *United States v. Bernstein*, 533 F.2d 775, 785 (2d Cir.), *cert. denied*, 429 U.S. 998, 97 S.Ct. 523, 50 L.Ed.2d 608 (1976); *United States v. Wolfson, supra; United States v. Sclafani*, 487 F.2d 245, 255–56 (2d Cir.1973); *King v. United States, supra.*

■ Corollary principles are that conclusions as to the veracity of witnesses or rulings made by the judge will not furnish grounds for disqualification.

"Any opinions formed for or against a party by reason of the evidence and observed conduct before a judge in a judicial proceeding, and the judge's expressions of such opinions, however vigorous, are not the personal 'bias and prejudice' required to disqualify a judge under the statute ... And the fact that personal observations by the judge in trial necessarily enter into his rulings is not cause for disqualification." *Mirra v. United States*, 379 F.2d 782, 788 (2d Cir.1967) *cert. denied*, 389 U.S. 1022, 88 S.Ct. 593, 19 L.Ed.2d 667 (1967) (citations omitted).

As Circuit Judge Frank pointed out in his eloquent opinion, involving also a referee in bankruptcy, *In re J.P. Linahan*, 138 F.2d 650, 654 (2d Cir.1943), it is the duty of the referee to form attitudes towards the witnesses:

"He must do his best to ascertain their motives, their biases, their dominating passions and interests, for only so can he judge of the accuracy of their narrations.... He has an official obligation to become prejudiced in that sense. Impartiality is not gullibility. Disinterestedness does not mean child-like innocence. If the judge did not form judgments of the actors in those court-house dramas called trials, he could never render decisions." (Footnotes omitted).

For equally strong reasons of policy, the Second Circuit held in *In re International Business Machine Corp., supra*, 618 F.2d at 929, a judge's rulings in a case cannot require him to step aside:

"A trial judge must be free to make rulings on the merits without the apprehension that if he makes a disproportionate number in favor of one litigant, he may have created the impression of bias. Judicial independence cannot be subservient to a statistical study of the calls he has made during the contest. As Mr. Justice Frankfurter noted in *Wilkerson v. McCarthy*, 336 U.S. 53, 65, 69 S.Ct. 413, 419, 93 L.Ed. 497 (1949) (Frankfurter, J., concurring), 'A timid judge, like a biased judge, is intrinsically a lawless judge.' We conclude that under section 455(a) the bias to be established must be extrajudicial and not based upon in-court rulings." (Footnotes omitted).

■ Applying these principles to the case at hand, it is clear that, even accepting the truth of the statements in Mr. Beagan's affidavit as the law appears to require, disqualification is not required.

My views respecting Mr. Beagan's credibility, however strongly expressed, were predicated exclusively on judicial sources.[4] They were incorporated in the decision rendered on April 30, 1980 explaining the reasons for converting Teltronics' proceedings from Chapter XI to Chapter VII, in which is found the following finding of fact:

"13. Teltronics has not been open and candid with its creditors and the statements made by its representatives to the Court and to its creditors have been, at best, misleading, and at worse, false."

Equally inadequate as cause for disqualification is the assertion that this Court having permitted the adversary proceeding against Ericsson to proceed before another judge, it is permanently disqualified from continued administration of this bankruptcy proceeding. The bankruptcy proceeding initiated in this Court on September 29, 1979, when an involuntary petition was first filed against Teltronics, and the administration of the estate of Teltronics, is wholly separate from specific controversies between the trustee and third parties. That this Court withdrew from the trial of one such specific proceeding does not require it to recuse itself either from continuing to preside over the overall bankruptcy proceeding or over separate and independent controversies within that proceeding.

Little need be said about the claim that various rulings allegedly adverse to Teltronics or its management and favorable to

Ericsson demonstrate a partiality disqualifying me from continuing to preside. No ruling was made in secret. The reasons behind every ruling were explained and spread on the record. If I were wrong, the remedy was an appeal to the District Court. The Second Circuit's decision in its IBM case precludes reliance on rulings as evidence of partiality under § 455(a) or bias under § 455(b)(1).

As for the remarks attributed to trustee's counsel, even if they were made, which counsel strongly denies, they scarcely constitute the objective facts which disqualification demands.

This brings me to the last and most troublesome aspect of the motion to disqualify and that is that this Court's strong, even acerbic, statement of the governing law in response to the trustee's oral motion for the same relief which it is now requesting disqualifies it from vindicating its own authority.

In warning Mr. Person at the hearing on August 10, 1983 that what he was doing might well constitute contempt of court and advising him in the strongest language that he was in error in believing that any case sanctioned his conduct, I was doing no less than my duty. As has already been noted, Rule 608 settled the law adversely to the cases on which Mr. Person evidently relied. His research, being incomplete, had apparently led him into error.

The error was, and is, a serious one. All causes of action belonging to Teltronics vested in the trustee as soon as Teltronics was adjudicated. § 70(a) of the Bankruptcy Act, former 11 U.S.C. § 110(a); *Gochenour v. George and Francis Ball Founda-*

4. When I advised the parties that because of my views with respect to Mr. Beagan I thought it would be preferable to have the trustee's action against Ericsson proceed before another judge I noted the source of my opinion of Mr. Beagan, saying: "I, in a sense, lived with Mr. Beagon [sic] for, shall I say, a year. I cannot erase from my mind my evaluation not only of his credibility, but of his character ... I appreciate that I am not required to disqualify myself. I think that that is clear. I do not think that I have any contact or interest in Ericsson or Teltronics prior to this matter coming before me.

Everything I know about Mr. Beagon [sic] I have learned sitting here at this bench. I know very well, as I wrote in my Opinion, in my opinion [this man] is entitled to absolutely no credibility. I would not believe him if he told me that this was Good Friday, and I also, during the course of the year he was before me in Chapter 11 [sic], it was clear he constantly misrepresented to the Court, he made promises to the Court, he played what I could only call in some ways a trick on the Court.... Now I cannot erase these things from my mind..." Tr. 4/9/82 at 14–21.

*tion,* 35 F.Supp. 508 (S.D.Ind.1940), aff'd per curiam, 117 F.2d 259 (7th Cir.1941), *cert. denied,* 313 U.S. 566, 61 S.Ct. 942, 85 L.Ed. 1526 (1941). They continued to be the property of the estate until the Court authorized their abandonment or the bankruptcy proceeding was closed. Bankruptcy Rule 608. "The fact that the trustee has failed to prosecute a claim does not permit a would-be plaintiff to bring suit without first petitioning the bankruptcy court for an order authorizing abandonment of the property." *Dallas Cabana, Inc. v. Hyatt Corporation,* 441 F.2d 865, 867 (5th Cir. 1971). Without seeking such an order, the defendants are claiming as their property various causes of action belonging to the estate. They are thereby interfering with property which is in *custodia legis,* which borders on, and may well be, contempt of court:

> "An adjudication in bankruptcy is a seizure by the court of bankruptcy and a transfer to that court of all property in the possession of the bankrupt at the time of the adjudication in which he has any interest. Thenceforth such property is a part of the trust estate in the legal custody of the court for the benefit of the creditors of the bankrupt and adverse claims....
>
> Any willful interference with any of this trust estate, any willful attempt to injure it, to withdraw it from the custody of the court, or to conceal it from the court or any of its officers whose duty it is to administer it, is a defiance of the power and an affront to the dignity of the court which may be punished by a judgment for contempt." *Clay v. Waters,* 178 F. 385 (8th Cir.1910) (citations omitted).

That such interference can be enjoined is well settled.[5] It would appear to follow that the very least the bankruptcy court is obliged to do when it learns of such interference is advise those responsible therefore that what they are doing is improper. To remain silent would appear to condone what is taking place and would fall short of discharging the duty of a bankruptcy judge to preserve the assets of the estate.

Judge Friendly, writing for a unanimous court in *In re Ira Haupt & Co.,* 398 F.2d 607, 612 (2d Cir.1968) stated the duties of a referee in bankruptcy very strongly: "A referee in bankruptcy is not simply an umpire calling balls and strikes. He has an affirmative responsibility for the proper handling of the estate, and that is not always discharged merely by ruling on papers the parties have presented to him".

The context in which Judge Friendly made this observation makes it peculiarly pertinent here. What led Judge Friendly to these remarks was the fact that the referee had stood by and permitted the trustee to deal with various causes of action belonging to the estate in a manner not calculated to produce the greatest maximum return to the estate. It was the opinion of Judge Friendly that the way the trustee was handling the causes of action might result in permitting "a possibly valid claim to evaporate". 398 F.2d 613.

If a referee fails to discharge his "affirmative responsibility for the proper handling of the estate" by doing nothing when a trustee fails to dispose advantageously of the estate's causes of action, how much greater would have been my fault if I had done nothing when the trustee advised me that the bankrupt was appropriating those assets for itself.

**5.** Mr. Justice Brandeis stated the applicable principles as following in *Ex Parte Baldwin,* 291 U.S. 610, 615, 54 S.Ct. 551, 553, 78 L.Ed. 1020 (1934):

"All property in the possession of a bankrupt of which he claims the ownership passes, upon the filing of a petition in bankruptcy, into the custody of the court of bankruptcy. To protect its jurisdiction from interference, that court may issue an injunction. The power is not peculiar to bankruptcy or to the federal courts. It is an application of the general principle that, where a court of competent jurisdiction has, through its officers, taken property into possession, the property is thereby withdrawn from the jurisdiction of other courts. Having possession, the court may not only issue all writs necessary to protect its possession from physical interference, but is entitled to determine all questions respecting the same."

The remarks which are now alleged to demonstrate partiality were in the nature of a declaratory ruling made with reference to the assets of the estate (for which I have "affirmative responsibility") and which ruling correctly stated the law. Since this Court has never authorized the trustee to abandon any cause of action belonging to Teltronics, it followed, from Bankruptcy Rule 608, that the proceedings brought before Judge Neaher in the name of Teltronics were unauthorized; that Mr. Persons' reliance on the concept of abandonment was misplaced; that whatever the decisions he was citing to Judge Neaher (as to abandonment being an issue of fact) are no longer good law; and that, consequently, what Mr. Person was doing was wrong and should stop. The test "under section 455(a) is whether a reasonable person with knowledge of all the facts would be led to the conclusion that the judge's impartiality might reasonably be questioned. See *Potashnick v. Port City Const. Co.*, 609 F.2d 1101, 1111 (5th Cir.), cert. denied, 449 U.S. 820, 101 S.Ct. 78, 66 L.Ed.2d 22 (1980); *United States v. Ritter*, 540 F.2d 459 (10th Cir.), cert. denied, 429 U.S. 951, 97 S.Ct. 370, 50 L.Ed.2d 319 (1976); *Matter of Searches Conducted on March 5, 1980*, 497 F.Supp. 1283, 1291 (E.D.Wis.1980); *Smith v. Pepsico, Inc.*, 434 F.Supp. 524 (S.D.Fla. 1977)." *In re Parr*, 13 B.R. 1010, 1017 (E.D.N.Y.1981).

I do not believe that a reasonable man, if advised of all the facts, would find lack of partiality from the declaration of the correct principles of law in the circumstances present here.

Accordingly, I am denying the motion to disqualify myself as insufficient on its face.

However, I have reluctantly concluded that it would be better, nevertheless, to withdraw and to permit another judge to assume jurisdiction over this bankruptcy proceeding in the interest of a speedy resolution at the least cost to the estate.

Therefore, I am requesting Chief Bankruptcy Judge C. Albert Parente to reassign the Teltronics' proceeding and all related adversary proceedings, including this one.